## Mack, Appellant, *v.* Hoover et al.

Argued April 15, 1941.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Edward T. Kelley,* for appellant.

*John J. Pentz,* with him *Ross H. Pentz,* for appellees.

OPINION BY MR. JUSTICE MAXEY, April 29, 1941:

This is an appeal from the refusal of the court below to award, on a case stated, a writ of peremptory mandamus to the plaintiff, Lawrence W. Mack, who is the appellant here.   The latter took a Civil Service examination for the Police Department of Du Bois, a City of the Third Class, in April, 1938, and was appointed by the City Council from a qualified list on July 19, 1939.   He served on the police force until January 17, 1940, when he was discharged by Mayor W. L. Hoover, who had opposed his appointment to the force. His place on the police force was taken by Edward Wilcox, a Sanitary Inspector in the Health Department.   He held this position in that department by virtue of the fact that he was an incumbent when the

Third Class City Code was enacted on June 23, 1931, P. L. 932, and this Code in section 4407 provides that "all persons holding appointments in said several departments . . . at the time this act goes into effect, [July 1, 1931] shall retain their positions without . . . examination".

On January 8, 1940, Wilcox was transferred by ordinance from the Health Department, where he received a salary of $125.00 per month to the position of Sergeant of the Police Department, where he received a salary of $140.00 per month, and on February 12, 1940, he was promoted to Assistant Chief of Police in charge of sanitation and traffic at another advance in salary to $145.00 per month. No examination was ever taken by Wilcox for the Police Department.

On January 8, 1940, Council of the City of Du Bois, enacted Ordinance No. 647, combining the office of Sanitary Inspector with the Bureau of Police. Section 3 provides that "after the enactment of this ordinance" the Bureau of Police "shall consist of one Chief of Police; one Lieutenant of Police; one Sergeant, who shall act as Sanitary Inspector and be in charge of traffic; and the present holder of the position of Sanitary Inspector shall, upon the adoption of this ordinance, become the Sergeant herein provided for as such, and shall serve until his successor shall be selected and qualified, in the manner hereinafter provided; . . ." Section 5 of the ordinance provides: "At the time of the enactment of this ordinance the occupant of the office of Chief of Police shall continue until otherwise directed by Council, and the occupant of the office of Sanitary Inspector or Sanitary Officer, shall forthwith be transferred to the Police Department and become a member of the Bureau of Police, with the rank of Sergeant; as provided in Section 3 hereof and with salary as provided in Section 4 hereof, and shall so occupy said office until otherwise disposed of by council, or in accordance with law. . . .".

On January 17, 1940, Mayor Hoover notified appellant in writing of the adoption of the ordinance, the reduction in the number of policemen made by this ordinance, and that the appellant was removed from the police force. The appellant petitioned the court below for a writ of alternative mandamus and asked the court to determine whether he, "although lawfully elected policeman," had been legally removed from that position. It is appellant's contention that the ordinance so far as it attempts to deprive him of his position as policeman is nugatory.

Section 2307 of the Third Class City Act (supra) provides at page 997 as follows: "The mayor shall detail police from the regular police force of such city to be known as 'sanitary police' or make new appointments for the purpose, whenever, in the opinion of the board of health, the public health and sanitary condition of such city may require. . . . Whenever, in the opinion of the board of health, the services of the sanitary police are no longer required, they shall, on recommendation of the board of health, be returned to duty as regular policemen or, if newly appointed, be dismissed as the mayor may direct; but no permanent increase of the police force shall be made without the consent of councils by ordinance duly enacted."

Appellees argue that this section of the Act gives councils of Third Class Cities the power to transfer the sanitary inspector to the police bureau. We do not so interpret it. This section gives the Mayors the power in times of emergencies to transfer from the regular police force a detail to be known as "sanitary police" and to return the members of this detail to the duties of regular policemen when their services as sanitary policemen are no longer required. It does not confer upon the Mayor power to give a sanitary officer the status of policeman.

Section 2001 of the Third Class City Act provides that "the council shall fix, by ordinance, the number,

rank and compensation of the members of the city police force, who shall be appointed in accordance with the civil service provisions of this act. . . ." Section 4401 provides: "No person or persons may be appointed to any position whatever in the police department, or . . . as sanitary policemen or inspectors of the health department, without having first passed all the examinations hereinafter provided for, and having been appointed in the manner and according to the terms and provisions and conditions of this article." Section 4402 provides: "There shall be the following civil service boards in each city: (a) A board for the examination of applicants for appointment to any position in the police department; (b) a board for the examination of applicants for appointment to any salaried position in the fire department (except volunteer departments), or health officers other than registered physicians, or as sanitary policemen or inspectors of the health department; (c) a board for the examination of applicants for appointment to any position in the engineering or electrical departments, or to the position of building inspectors. . . ." Section 4404 provides that "each of said boards shall prepare and adopt such rules and regulations to cover the selection and appointment of all persons as hereinbefore provided, to be hereafter employed or appointed in said cities, as in the judgment of said boards shall be best adapted to securing the best service for the public. Such rules and regulations shall provide for ascertaining and determining, so far as possible, the physical qualifications, habits, reputation, standing experience and education of all applicants for such positions, respectively. . . ." Section 4408 provides: "All employes subject to civil service shall be subject to suspension by the director of the department for misconduct, or violation of any law of this Commonwealth. . . ." This section also provides: "If it should become necessary to reduce the number of men in said department for purposes of econ-

omy; seniority rights shall prevail, and any and all removals for such cause or causes shall be from the members last appointed, and the member or members serving the shortest time shall be removed first; but members with longer times of service may be discharged for cause."

The City of Du Bois has the undoubted right to reduce, as a measure of economy, the number of its policemen. It also has the right to assign a policeman to duties as a sanitary officer, for the Third Class City Code so provides; but it has no right to appoint to its police force a person who has never qualified under Civil Service rules for a policeman's position. The fact that a man is a sanitary inspector no more legally qualifies him for the position of policeman than would the fact that he was a sewer inspector. Sanitary inspectors may be metamorphosed into policemen but there is more to the process than the mere enactment of an ordinance by the Du Bois City Council. A municipal ordinance cannot dispense with the Civil Service Examination which section 4401 of the Third Class City Act says is a prerequisite to an appointment "to any position whatever in the police department."

To transfer "the occupant of the office of sanitary inspector to the police department" and make him a member of the Bureau of Police with the rank of sergeant, was an attempted nullification of the Civil Service Law. If this ordinance is legal, any person who is serving in any other department of the municipal government can be made a policeman by fiat of council, regardless of his lack of qualifications. A man 70 years of age might under the civil service rules qualify for the position of sanitary inspector or for a position in the engineering department, and yet fall far short of qualifying for the position of policeman, whose age limit on entering this service in Du Bois is 35 years.

The ordinance in question has the *appearance* of legality only so far as it *purports* to be an *economic*

measure. It has the substance of illegality, and in sections 3 and 5 it has also the surface of illegality. The law does not permit the city of Du Bois to remove under any guise a policeman in order to give his status and emoluments to a sanitary inspector. Appellees in their paper book describe the process of transforming a sanitary inspector into a policeman as follows: "On January 8, 1940, ordinance known as Ordinance No. 647 went into effect, by which the number of policemen was fixed at six, including the Sanitary Inspector, *whose person and duties* were combined with the *Police Bureau,* and *appellant was dismissed.*" (Italics supplied.) The "plain English" of this is that the job of appellant, a duly qualified policeman under Civil Service protection, was arbitrarily taken away from him to make a place for a man who never legally qualified for a policeman's job, all this being done in the name of "economy." To economize in public expenditures is commendable but no economy incident to official action can ever condone its illegality. If what was done here by the Du Bois council is judicially legalized, there would be no impediment to the council's appointing *six* sanitary inspectors, abolishing the present police force and transferring the "persons and duties" of the former to the Bureau of Police, giving to each "person" respective rank from police chief to patrolman. The action of the Du Bois City Council does violence to both the spirit and the letter of the Civil Service Law. The language of Judge CARDOZO in *People v. Williams,* 213 N. Y. 130, 107 N. E. 49, is applicable here: "We think that if a new position, similar to the relator's, was created at the same time that the relator's was abolished, the commissioner was required, in filling the new position, to prefer the relator over others. The law will not permit him, for the purpose of ousting the relator and installing some one else to reduce the positions with one hand and increase them with the other."

Dillon on Municipal Corporations (pages 805, 806, 807, note) says: "The local authorities have no power to discharge an officer or employee of the city upon the pretense that his office is abolished and immediately thereafter assign another person to do the same work which had been done by the discharged employee." Throop on Public Officers, Book III, Chapter XVI, sec: 347, declares: "A power conferred upon police commissioners to remove subordinates for the purpose of reducing the force, cannot be exercised to create a vacancy for the appointment of another person." In *Leary v. Phila.*, 314 Pa. 458, 172 A. 459, cited by appellees, "economies had to be effected to make the budget fit the prevailing tax rate" and this court found that the director of public safety did not abuse his discretion in reducing on December 31, 1931, the police force by 130 of the older members whom, as the director testified, he "thought the department could best afford to lose", though 179 new appointments of qualified probationary policemen were made during the last half of December, 1931. The facts in that case distinguish it from the case now before us, where the appellant policeman was avowedly dismissed so that his position might be given to a sanitary inspector. In *Storm v. City of Scranton*, 77 Pa. Superior Ct. 283, it was held that a fireman in the fire department of a city of the second class, can only be dismissed upon his own written consent, or after trial in accordance with the provisions of the Act of March 7, 1901, P. L. 20.

We cannot agree with the court below that Wilcox was protected in his job as policeman because "the real functions performed by him were those which he had previously been performing for many years . . . . [and] the mere addition of the duty, in his available time, of assisting in other police work did not change the character of his position or deprive him of the civil service status he already had" as sanitary inspector. We are not now concerned with Wilcox's status as a

sanitary inspector. We are concerned only with the removal from office of a duly qualified policeman so that, as the city council declared by ordinance on January 8, 1940, the Sanitary Inspector "shall be transferred to the police department and become a member of the bureau of police with the rank of sergeant." (The promotion to "assistant chief of police" soon followed.) Unless this action of the appellees is reversed, the Commonwealth's promise expressed in section 4408 of the Act of June 23, 1931, P. L. 932, at page 1113, that "all employes subject to civil service shall be subject to" discharge only after being found guilty by the city council, of charges made against such employes, is illusory.

The judgment is reversed; the writ of peremptory mandamus shall issue; costs to be paid by the City of Du Bois.