## Wiltshire v. Callis, Mayor, et al.

### Galloway v. Same.

March 10, 1942.

754

Leland H. Logan for appellants.
John B. Rodes for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two cases have been consolidated, and will be disposed of in one opinion.

On March 28, 1940, Eli Wiltshire filed in the Warren circuit court a petition in equity against the city of Bowling Green and its board of councilmen in which he sought reinstatement as a policeman of the city of Bowling Green and recovery of his salary of $100 per month from December 19, 1939, the date on which he was discharged. He alleged in his petition that he was employed as a policeman on the——— day of ———, 1938, and served as a member of the regular police force of the city of Bowling Green until December 19, 1939, when he was discharged in violation of his rights under the Kentucky Statutes and the ordinances of the city of Bowling Green. He filed an amended petition in equity and with it, as exhibits, copies of various ordinances of the city affecting the police department, among them one entitled "An ordinance providing the qualification of members of the police and fire departments establishing their grade, rank, and removing them from all political or partisan activities." On April 3, 1940, Nathan Galloway filed a similar action in the Warren circuit court. He alleged that he was appointed policeman of the city of Bowling Green on September 4, 1939, and served as a member of the regular police force until December 19, 1939, when he was discharged. He sought to be reinstated and to recover his salary from the date of his discharge.

The record in each case is in an unsatisfactory condition. In the Wiltshire case the city demurred to the petition and amended petition. The plaintiff filed the depositions of four witnesses, and with the record in this condition the case was submitted on the pleadings, proof, and exhibits. A judgment was entered denying the relief sought by the plaintiff. In the Galloway case the city

filed a general demurrer which was later overruled, and also filed an answer which traversed the allegations of the petition and alleged affirmatively that the plaintiff was discharged because the number of policemen in the city of Bowling Green had been reduced by ordinance; that the reduction was made in good faith and with a view to needed economy in transacting the affairs of the city. It was further alleged that a floating indebtedness of $30,000 had been created during the months of September, October, and November, 1939, by the preceding board of council, and that the revenues of the city would be insufficient to pay any part of the indebtedness during the fiscal year ending May 31, 1940. No reply to this answer was filed. The plaintiff filed his own and the deposition of one other witness, and the case was submitted. A judgment similar to the judgment in the Wiltshire case was entered.

Each of the appellants contends that he was discharged in violation of Section 3351a-2, Kentucky Statutes, which provides for the regulation of the police departments of cities of the third class, and ordinance No. 334 of the city of Bowling Green, which was adopted in accordance with the provisions of Section 3351a-2 of the Statutes. Section 2, Subsection 1, of the Statute permits the general council of a city of the third class to prescribe the qualifications of members and officers of the police department, and Subsection 2 empowers the general council to require all applicants for appointments as members of the police force to be examined as to their qualifications to fill the office of policemen, and as to their knowledge of the English language, and as to the law and rules governing the duties of policemen. It is further provided that members of the police departments shall hold their positions during good behavior, provided, however, that the provisions of the Act shall not prevent the general council from decreasing the number of policemen as it may from time to time deem proper. The ordinance, known as the Civil Service Ordinance, adopted by the board of councilmen for the city of Bowling Green to conform to the Statute, contains this section:

"Before being appointed to the position of fireman or policeman, the applicant for such appointment shall be examined by the regular police and fire committees of the Common Council as to his qualifications to fill the office of such policeman or fireman,

and as to his knowledge of the English language and of the laws and rules governing the duties of policeman or fireman.''

Ordinance No. 334 was adopted February 20, 1931, and it fixed the number of policemen at twelve. On August 21, 1939, the ordinance was amended by increasing the regular number of policemen to fifteen. The personnel of the board of council changed on December 1, 1939, and on December 8, 1939, an ordinance was adopted fixing the number of policemen at twelve, and on December 19, 1939, the two appellants and one other policeman were discharged. On March 8, 1940, an ordinance was adopted increasing the number of policemen from twelve to fifteen, and providing that they should work in three shifts of eight hours each instead of two shifts of twelve hours each. Appellants rely chiefly upon this circumstance, and cite Glass v. Board of Common Council of City of Frankfort, 262 Ky. 471, 90 S. W. (2d) 700, and City of Middlesboro v. Gibson, 225 Ky. 120, 7 S. W. (2d) 825, in support of their claim that the action of the city council was unreasonable and arbitrary, and that each of them should be reinstated with the rank and standing he had at the time of his discharge. In the cases cited by appellants the rule was recognized that the court will not interfere with the discretion vested in the board of councilmen in the absence of abuse, and further that changes in the number of policemen is a matter within its discretion and a reduction of the police force will not be deemed unreasonable or arbitrary if made as a matter of necessity and in the interest of economy. In those cases the facts showed the act of the board of councilmen in reducing the number of policemen was merely an attempt to evade the spirit and purpose of the statute. The act of the board of councilmen in increasing the number of policemen soon after decreasing the number and discharging certain members of the force is a circumstance to be considered in determining whether or not it acted in good faith in the first instance, but is not conclusive. In the cases before us no proof was introduced on the question of good faith. In the Galloway case the city in its answer alleged facts showing that the reduction in the number of policemen was made in the interest of economy and that the council acted in good faith, and there was no denial of these allegations. In the Wiltshire case the only pleading filed by the city was a demurrer. Except for the circumstance that the ordinance

of March 8, 1940, increased the number of policemen in the city of Bowling Green to fifteen after the ordinance of December 8, 1939, had reduced the number to twelve, there is nothing in the pleadings or proof bearing on the question of good faith. Without considering that question, we have concluded that the judgments should be affirmed on the ground hereinafter discussed.

The records disclose, and it is conceded by appellants, that neither of them took the examination prescribed by the ordinance. In order to acquire the status of a policeman entitled to the protection of the civil service provisions of the statute and ordinance, the applicant for appointment must pass the civil service examination provided for by the ordinance. Otherwise, an unqualified person could be employed by the board of councilmen, and the salutary purpose of the statute and ordinance would be evaded. Only regular policemen who have passed the civil service examination, which the legislative body of the city has prescribed, are entitled to the statutory protection from discharge. Seviers v. City of Middlesboro, 283 Ky. 124, 140 S. W. (2d) 817; White v. City of Hopkinsville, 280 Ky. 661, 134 S. W. (2d) 236, 237. In Callis, Mayor, v. Brown, 283 Ky. 759, 142 S. W. (2d) 675, 679, it was pointed out that the restriction contained in the statute as to the age limit must be observed as well as the examination requirement in order to render an appointee to the police force immune from discharge at the will of the city council. The statute provides that no person shall be appointed a member of the police force who is over 50 years of age. Brown, a member of the Bowling Green police force, was over 50 years of age when he was appointed, and was discharged in December, 1939, at the same time appellants were discharged. He brought an action to compel the city authorities to reinstate him, and the circuit court adjudged that he was entitled to the relief sought. This court reversed the judgment, and, in the course of the opinion, said:

"The statute provides that members of the police force 'otherwise qualified under this law shall hold their positions during good behavior.' The term 'otherwise qualified' means such qualifications as are specifically provided by the statute. These qualifications are in addition to such as may be or are developed by the examination provided. The

council, and not the examining board, is the body which passes on the statutory qualifications.

"In the City of Middlesboro ex rel. Minton et al. v. Gibson, supra, we held that the attempt of the outgoing board to adopt an ordinance declaring an applicant for chief of police to have had the proper qualifications without examination, to be ineffectual, and the mayor refusing to recognize Minton's attempted appointment valid, we held that the mayor was correct. The appointing authorities in the instant case could no more waive the age qualification, than in the case cited they could validly waive the examination requirement."

Neither Galloway nor Wiltshire ever passed the examination provided for in the ordinance, and it follows that they are not entitled to the protection afforded by its civil service provisions.

The judgment in each case is affirmed.