CITY OF SAN ANTONIO ET AL V. CURTIS WALLACE ET AL.

No. A-7615. Decided July 13, 1960.
(338 S.W. 2d Series 153)

42

*Carlos C. Cadena,* City Attorney, and *Charles L. Smith,* Assistant City Attorney of San Antonio, for petitioner.

The Court of Civil Appeals erred in holding that respondents were entitled to hold his former position; that the ordinance passed and approved by the City Council, abolishing the classification of custodial workers in the personal and police department of the city was null and void; that the court could inquire into the good faith of the city council in passing said ordinance; that said city council acted in bad faith in the adoption of said ordinance and that said ordinance showed on its face that it was not passed to abolish the positions in question, but was for the purpose of ousting said respondents from the positions held by them. Glass v. Smith, 150 Texas 632, 244 S.W. 2d 645;

Gray v. Woodring Lbr. Co., Texas Civ. App., 197 S.W. 2d 231; City of Amarillo v. Hancock, 150 Texas 231, 239 S.W. 2d 788.

*Adrian A. Spears,* of San Antonio, for respondent.

MR. JUSTICE NORVELL delivered the opinion of the Court.

The petitioner's motion for rehearing in this cause was duly considered after submission and oral argument in the connected causes of City of San Antonio v. Kneupper, 161 Texas 153, 338 S.W. 2d 121, City of San Antonio v. Whitten, 161 Texas 150, 338 S.W. 2d 119, and City of San Antonio v. Carr, 161 Texas 155, 338 S.W. 2d 122. Such motion is overruled. Our original opinion in this cause is however withdrawn and the following substituted therefor:

The case involves the validity of an ordinance of the City of San Antonio which attempts to abolish certain classified positions held by respondents under the Firemen's and Policemen's Civil Service Act. Article 1269m, Vernon's Ann. Texas Stats. The trial court in effect held that the questioned ordinance was not adopted in good faith but for the purpose of depriving the respondents of their rights under the Civil Service law. Upon motion for summary judgment, mandamus was granted ordering the reinstatement of respondents in the municipal service. The Court of Civil Appeals affirmed. See, City of San Antonio v. Wallace, 330 S.W. 2d 212 which refers to City of San Antonio v. Kneupper, 330 S.W. 2d 205, decided the same day.

Each of the respondents held classified places as custodial workers in the Police Department of the City of San Antonio under the provisions of Article 1269m, Sec. 12, Vernon's Ann. Texas Stats. in that they were permitted to serve in such positions for a period of six months which ipso facto operated to create such places and give them the status of holders of classified positions under the Civil Service Act. Such status was definitely recognized in City of San Antonio v. Handley, Texas Civ. App., 308 S.W. 2d 608, wr. ref., which set out in some detail the legal experience of the City of San Antonio with the Civil Service Act and held that the fifty-one employees involved in that case (including the respondents here) did not lose their Civil Service positions by an attempted transfer from the Police Department to the Public Works Department which is not covered by the Firemen's and Policemen's Civil Service Act. By means of the ordinance now under attack, the City sought to abolish respondents' classified positions although obviously

the work theretofore performed by respondents, i.e., the cleaning and caring for buildings, would have to be done by others. The City engaged the Building Servicing Company as an independent contractor to perform such services.

The above facts are disclosed by admissions made under Rule 169, Texas Rules of Civil Procedure, and the depositions of the Personnel Director and Chief of Police of the City of San Antonio. In its pleadings and in its own motion for summary judgment the City did not assert that the abolition of the civil service positions held by respondents was to effect an economy in governmental operations or to secure more efficient custodial care of the City's buildings. In the motion for summary judgment, it was simply stated that the positions formerly held by respondents had been abolished by ordinance and that the City had engaged an independent contractor to perform all custodial services for the Police Headquarters Building and the Corporation Court Building.

Upon this record the Court of Civil Appeals concluded that the City had "again attempted to discharge these employees, while continuing the positions they occupied in the Police Department, by contracting with the Building Servicing Company, an independent contractor, to furnish the individual workers who supplant these appellees (respondents) in the same position and perform the same services in the Police Department."

The City's primary contention here, which was apparently the only theory urged in the trial court, is that the good faith of the City's action in passing the ordinance abolishing the respondents' positions is not subject to judicial inquiry for want of good faith. It is urged that "despite law to the contrary in other jurisdictions, the Texas Supreme Court has established the law in this State to be that where a legislative body, such as the City Council here, has the power to do something (such as abolish Civil Service positions) they cannot be subjected to inquiry by the courts as to its good faith, motives, reasons or purposes. Gray v. Woodring Lumber Co., Texas Civ. App., 197 S.W. 231, wr. ref.; City of San Antonio v. Fetzer, Texas Civ. App., 241 S.W. 1034, wr. ref.; City of San Antonio v. Walters, Texas Civ. App., 253 S.W. 544, wr. ref.; Bielecki v. City of Port Arthur, Texas Civ. App., 2 S.W. 2d 1001, reversed on other grounds, Texas Com. App., 12 S.W. 2d 976; Community Natural Gas Company v. Northern Texas Utilities, Texas Civ. App., 13 S.W. 2d 184, wr. dis. * * *"

The rule supported by the cited authorities is general in nature and applicable whenever a legislative enactment or a valid provision of a Home Rule city charter vests a discretionary power in a city council or like governmental agency. None of the cases relied upon relate to ordinances which attempt to abolish classified positions under a civil service act adopted by a state legislature. Where state imposed civil service or veterans preference laws are involved, there are two legislative actions to consider, i.e., the state enactment and the city ordinance, or specifically, as applied to this case, the Firemen's and Policemen's Civil Service Act, and the ordinance adopted by the City Council of the City of San Antonio which seeks to abolish the positions held by respondents.

■ While the City of San Antonio is a home rule city, Article 11, Sec. 5 of the Texas Constitution (the home rule amendment) expressly provides that "no [City] charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of this State, or of the general laws enacted by the Legislature of this State; * * *." Should we close the doors against a judicial inquiry into the element of good faith in municipal action, a colorable or sham ordinance could render an express constitutional provision impotent and meaningless. The policy of the state, as reflected in its civil service statutes, would be at the mercy of municipal action. In this situation, the courts in carrying out state policy must consider the element of good faith in passing upon the validity of municipal actions.

This seemingly is the universal rule among the American jurisdictions whenever a question of the abolition of an office classified under a state civil service act is involved, although there is some divergence of opinion as to the nature and scope of the judicial inquiry.

McQuillin recognizes the general rule that, "[W]here a municipal corporation under charter or legislative act has power to create by ordinance an office, it also has the power to abolish it." McQuillin, Municipal Corporations Sec. 12.118. However, when civil service and veterans preference laws are involved, the action of the city council must be taken in good faith to effect an economy in operations or a betterment of municipal service as "There is a real and fundamental distinction between the lawful abolition of an unnecessary position and the discharge of a faithful employee in violation of the rights secured to him by statute; and the latter action can neither be concealed

nor protected by a pretense that it was in the exercise of the former right." McQuillin Sec. 12.119 quoting from Garvey v. Lowell, 199 Mass. 47, 85 N.E. 182 and Murphy v. Justices of Municipal Court, 228 Mass. 12, 116 N.E. 969. If the attempt to abolish an office be merely colorable and the real objective be to legislate one out of office or a civil service position, the courts are not bound by the apparent form of the action but will disregard the pretense and be governed by the substance of the action. McQuillin Sec. 12.121; Smith v. Sells, 156 Tenn, 539, 3 S.W. 2d 660. Tenure of office and civil service laws cannot be evaded by a sham or pretended abolisment of position. Mack v. Hoover, 342 Pa. 291, 20 A. 2d 757; Cohen v. Hamilton, 15 N.J. Misc. 74, 188 A. 669. Annotations 4 A.L.R. 205', Power to Abolish or Discontinue Office, specifically as to positions under "Tenure of office, civil service, and veteran laws," p. 207; 172 A.L.R. 1366, 1369. 62 C.J.S. 1179, Municipal Corporations Sec. 585, p. 1179, 10 Am. Jur. 933, Civil Service Sec. 12.

We find no Texas cases which militate against the general American rule represented by the authorities above cited and discussed and accordingly overrule petitioner's contentions that there can be no judicial inquiry as to whether or not the City Council's action in abolishing the positions held by respondents was a good faith action. We do not wish to be understood as holding that the secret motives of members of the City Council are matters for judicial inquiry. If an action be proper as an economy move, it would not be rendered otherwise because a member of a city council derived some malicious pleasure because a particular individual lost his job. Rossi v. Mayor and Council of Moonachie, 127 N.J. Law 374, 22 A. 2d 564. The authorities however do support the proposition that an action of a city legislative body abolishing civil service positions may be judiciially examined in the light of its surrounding circumstances, the prior and subsequent actions of such legislative body and the public policy represented by the civil service law in order to determine the good faith of the questioned action.

As an alternative proposition, the City asserts that even if the courts may inquire into the good or bad faith of the City Council in passing the ordinance, the trial court was not authorized to find that the Council acted in bad faith. As above pointed out, there were no pleadings which suggested that the questioned ordinance was adopted in the interest of either economy or increased efficiency, and the City relies heavily upon the doctrine that public officials are presumed to act in good faith.

■ While, as above stated, the authorities are in accord with the proposition that an ordinance abolishing a civil service office must be a good faith action, there is some difference of opinion as to how the issue of good faith should be determined. Some courts regard the issue as being an ordinary question of fact to be determined in the same way as any other factual problem, presumably by a jury under proper instructions of the court. Gaul v. City of Philadelphia, 384 Pa. 494, 121 A. 2d 103,[1] Rexstrew v. Sity of Huntington Park, 20 Cal. 2d 630, 128 P. 2d 23,[2] State ex rel Niemi v. Thomas, 223 Minn. 435, 27 N.W. 2d 155.[3] On the other hand, the Kentucky Court of Appeals seems to regard the issue of good faith in abolishing a civil service position as presenting a question of an abuse of discretion or arbitrary action on the part of the municipal governing board. Glass v. Board of Common Council of City of Frankfort, 262 Ky. 471, 90 S.W. 2d 700; Wiltshire v. Callis, 289 Ky. 753, 160 S.W. 2d 173. Under this view, the question presented would be one of law for the judge's decision. This seems to be the preferable approach.

As judgment in this case was rendered upon motion for summary judgment, we determine from an examination of the affidavits, admissions and depositions on file whether or not the City Council has abused the discretion vested in it by law

So far as the pleadings and the proceedings relating to the summary judgment are concerned, the City never attempted to support its action in abolishing respondents' civil service positions. Its position is that it was not required to do so. It is urged that respondents' case must fall because they failed to show that the employment of an independent contractor was *not* in the interest of economy or was not in the promotion of more efficient municipal service. Perhaps other grounds could be put

---

1.—"An issue of fact, determinable by trial on the merits, was sufficiently raised in each case, namely, was there a bona fide abolishment of plaintiff's position?" Gaul v. City of Philadelphia.

2.—"The power to abolish a position may not be used to effect the discharge of an employee protected by the salutary provisions of civil service regulations, unless such power is exercised in good faith. Livingston v. MacGillivray, 1 Cal. 2d 546, 553, 36 P. 2d 622; Childress v. Peterson, 18 Cal. 2d 636, 117 P. 2d 336; Winslow v. Bull, 97 Cal. App. 516, 523, 275 P. 974. Here respondents held their respective positions under tenure acquired through the adoption of the civil service ordinances. Each had attained the status of a permanent employee and neither was charged with misconduct or any dereliction of duty referred to in the ordinances. The trial court's findings that the positions were not abolished in good faith, being supported by substantial evidence, will not be disturbed by this court." Rexstrew v. City of Huntington Park.

3.—"Whether the village council in good faith abolished the position is a fact issue, and if the evidence supports the findings of good faith the finding should be sustained." State ex rel. Niemi v. Thomas.

forth in support of the City's action in abolishing these respondents' civil service positions but they have not yet been suggested to us.

While there is a presumption favoring the regularity of official acts, this presumption should not be extended in civil service cases so as to support the position urged by the City here.

■ As set forth in the opinions of the Court of Civil Appeals in this case, the connected Kneupper case [330 S.W. 2d 205] and the prior Handley case, [308 S.W. 2d 608, writ of error refused] these respondents' civil service status has been sustained notwithstanding the City's attacks thereon. The record of the summary judgment proceedings discloses that the duties performed by respondents as civil service employees are essential to the operation of the Police Department, namely, the maintenance of its buildings. It is further shown that such services are now being performed for and on behalf of the City by others. The abolishing ordinance stands unsupported by either recitation, pleading or evidence;—its purpose is unexplained in the record. On the record, the trial court was justified in concluding that the respondents had been legislated out of office and that the unsupported ordinance was not a good faith enactment.

To say that a discharged employee must go further and without being advised of the particular ground upon which validity for the ordinance is premised, bear the burden of adducing evidence negativing the supposition that the ordinance is a valid economy measure, a valid efficiency measure, or what not, is to exalt a mere evidentiary presumption at the expense of the efficacy of the civil servic law.[4] The handicap to the displaced employee is obvious, while on the other hand, it should entail no great hardship on the City to support its action in destroying civil service positions and substituting an independent contractor system in its place. Most certainly the City is in a much better

---

4.—The case of City of San Antonio v. Cullen, Texas Civ. App., 168 S.W. 2d 882, no writ history, involved an interesting example of the attempted use of a city ordinance to force a claimant to prove the legal prerequisites of his claim despite the fact that such claim was evidenced by a warrant duly issued for back pay to firemen and policemen and in accordance with a city ordinance. The City by ordinance simply declared that the warrant and others like it were "null and void." The Court of Civil Appeals did not hold that this ordinance made it incumbent upon the claimant to rebut every possibility of illegality before recovery could be had, but to the contrary held that the City had the burden of establishing the illegality of the warrant. It was said that, "As to the repealing ordinance of March 28, 1940, the record is entirely silent of any suggestion as to the reason why the ordinance was adopted," and a judgment upon the warrant was therefore affirmed.

position to produce the pertinent facts as to the economy and efficiency of the operative change in plan than is the workman who lost his job as a result thereof.

■ In the annotation following the report of State Compensation Insurance Fund v. Riley, 9 Cal. 2d 126, 69 P. 2d 985, 111 A.L.R. 1503 in the American Law Reports, it is stated that, "The device of an agreement under which one is engaged as an 'independent contractor' rather than an 'employee' in order to circumvent requirements of civil service, appears to have been reviewed in few reported cases." Such agreements are seemingly scrutinized carefully as the unrestricted use thereof could obviously defeat the public policy of the state as evidenced by its civil service law, which is to place municipal employees for the most part upon a merit system and free them from political control. It was pointed out in Stockburger v. Riley, 21 Cal. 2d 165, 68 P. 2d 741 that:

"If this [independent contractor] agreement is valid, there is nothing to prevent similar agreements from being made with relation to other janitor service, gardening, typing, and many other branches of service now accepted as subject to civil service. To sanction such an agreement would destroy the effectiveness of the enactment of the people in creating a Civil Service Act."

In State Compensation Insurance Fund v. Riley, supra, the Supreme Court of California recognized the employment of an independent contractor as being the unusual procedure, and one which the employing authority must justify. The State Compensatin Insurance Fund sought to employ an attorney upon an independent contractor basis. The Court pointed out that the Fund had "not alleged that the services here involved could not be rendered by one selected under the provisions of the Civil Service Act, * * *. [T]he petition does not allege that the services here involved could not be performed satisfactorily by an attorney selected under civil service."

Similarly in Glass v. Board of Common Council of the City of Frankfort, 262 Ky 471, 90 S.W. 2d 700, 703, the Kentucky Court of Appeals, while recognizing the right of the City to abolish civil service positions and thus reduce its police force as an economy measure, nevertheless recognized that such action must be supported by the City. It was pointed out that:

"The answer [of the City] does allege in effect that the move was made in the interest of economy, but this allegation is not

sustained by the stipulation or other proof. Neither pleading without proof, nor proof without pleading is sufficient."

We are here concerned with a civil service case which involves a city ordinance of a particular type, namely, one attempting to abolish civil service positions. While the ordinance is legislative in form, it is largely adminstratve in effect. We are not concerned with the constitutionality of a statute as was the case in State v. Southwestern Gas v. Electric Company, 145 Texas 24, 193 S.W. 2d 675. We are, however, concerned with supporting the public policy declared by the Legislature in the Firemen's and Policemen's Civil Service Acts. Vernon's Civ. Stat., Art. 1269m. The respondents have by proper pleadings and motion for summary judgment, shown that they are legally entitled to civil service positions by transfer to a department not covered by the Firemen's and Policemen's Civil Service Act; that the services performed by them as civil service employees are still reasonably necessary to the operation of the Police Department, and that such services are now being rendered by others. There is nothing shown in the pleadings, depositions or summary judgment record which supports the City's action in abolishing respondents' positions. If the Firemen's and Policemen's Civil Service Act is to retain its effectiveness and remain a positive instrumentality for the accomplishment of an obvious legislative purpose, an affirmance of the judgment of the Court of Civil Appeals is called for. Such judgment is affirmed.

Opinion delivered July 13, 1960.

MR. JUSTICE GRIFFIN dissenting.

The part of the majority opinion from which I particularly dissent is the following:

"It seems reasonable to say that if an established plan involving the use of employees having civil service status is to be modified and in part abolished, the burden of going forward with evidence to show that real economy or more efficient service will result from the change should rest upon the municipality desiring to effect the change. * * *."

As I understand it, the majority opinion thus puts the burden of proof on the city to justify an ordinance which has been passed in due form by the legislative body of the city. That is contrary to my concept of the law. It is my understanding that

an ordinance is presumed to be valid and the burden is on the party seeking to set aside the ordinance to show invalidity. See Reed v. City of Waco, Texas Civ. App., 1949, 233 S.W. 2d 247, wr. ref., as follows:

"* * * It is equally well settled that 'The presumption is always in favor of the validity of legislation; and if there could exist a state of facts justifying the classification or restriction complained of, the courts will assume that it existed.' Nolen v. Riechman, D. C., 225 F. 812, 819. * * * The Supreme Court of the United States in Sproles v. Binford, 286 U.S. 374, 52 S. Ct. 581, 76 L. Ed. 1167, wherein a Texas statute was the subject of litigation, held outright that the transportation of persons for hire need not be treated as falling within the same classification for the purpose of regulation. See also Packard v. Banton, 264 U.S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Auto Transit Co. v. City of Fort Worth, Texas Civ. App., 182 S.W. 685, writ ref.; Fletcher v. Bordelon, Texas Civ. App., 56 S.W. 2d 313; Dallas Taxicab Co. v. City of Dallas, Texas Civ. App., 68 S.W. 2d 359."

Also see Beene v. Bryant, Texas Civ. App., 1947, 201 S.W. 2d 268 (6-12), no writ history; Fletcher v. Bordelon, Texas Civ. App., 1933, 56 S.W. 2d 313, wr. ref.; 30A Texas Jur. 291, section 300.

I think it is dangerous to promulgate a special rule contrary to general principles to fit special situations, and for that reason I respectfully dissent.

Opinion delivered July 13, 1960.