J. E. KEATON, Appellant,

v.

M. V. YBARRA, N. C. Garza, D. M. Castillo, and the City of Kingsville, Texas, Appellees.

No. 1151.

Court of Civil Appeals of Texas, Corpus Christi.

May 31, 1977.

Rehearing Denied June 23, 1977.

Thomas D. McDowell, Howard, McDowell & Cartwright, Corpus Christi, for appellant.

Nelson R. Sharpe, Glusing & Sharpe, Kingsville, for appellees.

## OPINION

NYE, Chief Justice.

This case is an appeal from the denial of a writ of mandamus, sought to reinstate the City Manager of the City of Kingsville. Julian Keaton was removed from the city manager's position by the then city commission of Kingsville. Keaton brought suit to be reinstated in that position. Trial was to a jury. From a trial court judgment denying the mandamus, Keaton appeals to this Court.

Julian Keaton is a professional city manager hired in that capacity by the City of Kingsville in January of 1970. The controversy that gave rise to this litigation began following the retirement in 1971 of a Mr. T. A. Reid, the city tax assessor-collector. Keaton appointed Margaret Saenz, a long time clerk in the tax office as Mr. Reid's temporary replacement and began to search for a qualified assessor to replace Mr. Reid. After approximately one year, Keaton hired Robert Nelson as the new tax assessor-collector.

Very soon after Nelson was hired, Mrs. Saenz resigned evidently in protest over the hiring of Nelson. Apparently Mrs. Saenz felt she had originally been promoted to the position of tax assessor-collector and was now being replaced by Mr. Nelson. Mrs. Saenz manifested her dissatisfaction further by filing a complaint against the city with the regional Equal Employment Opportunity Commission. Mrs. Saenz couched her complaint on the basis of sex discrimi-

nation, complaining primarily that she was constructively discharged from her position as tax assessor-collector when the city manager hired Mr. Robert Nelson for the position that she had held. Keaton evidently took this complaint as a personal charge against him of discrimination. At the conclusion of its investigation, the Equal Employment Opportunity Commission determined there was reasonable cause to believe that the City of Kingsville had in fact engaged in unlawful employment practices as it concerned Mrs. Saenz. Upon notice of this determination, the city commission instructed the city attorney and Keaton to confer with Mrs. Saenz's attorney and attempt to reach a settlement of her claims against the city. The city commission, on advice of the city attorney, reached an agreement with Mrs. Saenz wherein she was to be reinstated as the city tax assessor-collector, her retirement benefits would be reinstated and she would receive $1,200.00 for accrued vacation and sick leave previously lost. This agreement was in furtherance of the city's stated policy of avoiding litigation. Keaton strongly disagreed with this policy and refused to participate in the settlement negotiations.

After the commission had voted to reinstate Mrs. Saenz, Keaton let his position on that subject be known to everyone by sending a letter to both the local Kingsville newspaper and to the Corpus Christi morning newspaper. In this "open letter", Keaton stated that he felt the commission's action was incorrect and that he refused to reinstate Mrs. Saenz. At the commission meeting of July 15, 1974, Keaton's "position" letter was read into the minutes of the meeting and the question of what action the commission would take was discussed in a closed session. At the commission meeting of July 19, 1974, the settlement agreement with Mrs. Saenz was ratified by the commission. At the same meeting, Commissioner Ybarra asked Keaton if he intended to abide by the city's agreement with Mrs. Saenz. Keaton replied in the negative. Commissioner Ybarra then moved that Keaton be suspended for insub-

ordination pending a hearing on his discharge as city manager. After some discussion, Ybarra's motion was passed. Keaton then requested a public hearing on his dismissal. On August 19, 1974, a public hearing was held as requested by Keaton. Thereafter the city commission adopted a final resolution removing Keaton as city manager.

About one year later, Keaton filed his original petition against the city, its manager and city commissioners seeking $550,-000.00 in damages for libel and slander. In February 1976, Keaton filed his third amended original petition wherein he abandoned his cause of action for libel and slander and sought a writ of mandamus to reinstate him as the City Manager of the City of Kingsville.

Trial was to a jury. At the conclusion of the testimony, special issues were submitted to the jury which were answered against Keaton. The first special issue was whether or not the commissioners who voted for the preliminary resolution acted in bad faith. Based on the jury verdict, the trial court entered a take nothing judgment.

The first question is raised not so much by appellant's first point of error as it is by appellee's first counter-point. Appellant's first point of error is that the trial court erred in overruling his motion for judgment non obstante veredicto because, as a matter of law, he was not insubordinate. Appellees' first counter-point of error is that the appointment and removal of a city manager is a legislative action within the discretion of the city commission and as such is not subject to judicial review.

The City of Kingsville is a home rule city which has adopted the city-manager form of government pursuant to Art. 1164a, et seq., Tex.Rev.Civ.Stat.Ann. (1963). (For a discussion of the city-manager form of municipal government, see McQuillan Municipal Corporations § 9.21 (3rd ed. 1966).) Art. 1164a–5 entitled powers and term of manager reads as follows:

"If such city has authorized by vote, as in this Act provided, the appointment of a city manager, then after the appointment

of such city manager as herein provided, the administration of the city's business shall be in the hands of such manager. *The manager shall be appointed by the governing body and shall hold office at the pleasure of the governing body.* The governing body shall be responsible for the manager's efficient administration of the city's business. The governing body by ordinance may delegate to and confer upon such manager such additional powers and duties as in their judgment may be proper for the efficient administration of the city affairs." (emphasis supplied)

Section 32 of the Kingsville City Charter provides that:

"The Commission shall appoint a City Manager for an indefinite term and may remove him by majority vote of its members. At least thirty days before such removal shall become effective, the Commission shall by a majority of its members adopt a preliminary resolution stating the reasons for his removal. The manager may reply in writing and may request a public hearing, which shall be held not earlier than twenty days nor later than thirty days after the filing of such request. After such public hearing, if one be requested, and after full consideration, the Commission by majority vote of its members may adopt a final resolution of removal. By the preliminary resolution the Commission may suspend the manager from duty, but shall in any case cause to be paid him forthwith any unpaid balance of his salary for the next three calendar months following adoption of the preliminary resolution."

It should be noted that Keaton makes no complaint here that the procedures provided in Section 32 of the Kingsville City Charter were not followed by the commissioners.

The question before us is to what extent is the dismissal of a city manager subject to judicial review. Art. 1164a states simply, that a city manager may be removed at the pleasure of the governing body of the city. However section 32 of the Kingsville City Charter provides some limitation on this removal by stating there must be some

reason for the removal. Beyond this very broad criterion, however, there seems to be no impermissible grounds for the removal of a city manager. At the outset we recognize, of course, that no person can be dismissed from his employment on the grounds of race, religion, sex or any other constitutionally prohibited grounds that would amount to discrimination. Keaton does not complain here of any such discrimination. Therefore, the question is to what extent, if any, can a court review the action of a city commission in removing its city manager.

■ The general rule is that where a legislative body such as a city council, has the power to do something (such as the hiring and firing of the city manager) it cannot be subject to inquiry by the courts as to good faith, motives, reasons or purposes. *City of San Antonio v. Wallace*, 161 Tex. 41, 338 S.W.2d 153 (1960) and the many cases cited therein. This rule is general in nature and applicable whenever a valid provision of a home rule city charter vests a discretionary power in a city council. *City of San Antonio v. Wallace*, supra. The case of *Riggins v. City of Waco*, 100 Tex. 32, 93 S.W. 426 (1906) is analogous to the case at bar. In the *Riggins* case, a mayor sought to be reinstated by writ of mandamus. The court pointed out that the power of removal was vested in the city council and no power of review was given to the courts. The court did point out that where the law required that the removal be for a specified cause, the courts may inquire whether or not the council exceeded its lawful authority in such a removal. Beyond this review, the courts have no power over the subject matter. The most that could be asserted in favor of the power of the courts is that they may inquire whether or not charges were duly preferred, a hearing had been given, and evidence adduced tending to sustain the charges.

■ A court should not interfere in the removal of a city manager, unless there is a definite showing that the policy-making body of the city acted arbitrarily and capriciously. The merits of the removal proceeding will not be considered by the courts, nor will the courts substitute their judgment and opinion for that of the tribunal that is vested with the power of removal. 56 Am.Jur.2d Municipal Corporations § 187 (1971). This same limitation on judicial power is also recognized by the Federal Courts. See *Harvey v. Nunlist*, 499 F.2d 335 (5th Cir. 1974); *Hodgin v. Noland*, 435 F.2d 859 (4th Cir. 1970); *Chiriaco v. United States*, 339 F.2d 588 (5th Cir. 1964); *Hargett v. Summerfield*, 100 U.S.App.D.C. 85, 243 F.2d 29 (1957) cert. denied, 353 U.S. 970, 77 S.Ct. 1060, 1 L.Ed.2d 1137.

■ Since the appellant Keaton does not complain that the city commission acted arbitrarily or capriciously, our review is thereby limited to the qualifications placed on the City of Kingsville by its own city charter. See *Riggins v. City of Waco*, supra. Under the *Riggins* decision, this Court may only review the questions of 1) whether or not charges were preferred against Keaton; 2) whether or not Keaton was provided a hearing; and 3) whether or not there was any evidence from which the council, acting fairly, might have found Keaton to be insubordinate. The record before us clearly indicates that all three of these elements were satisfied.

At the meeting of the city commission of July 19, 1974, and pursuant to section 32 of the City Charter, Keaton was charged with being insubordinate by the council for refusing to reinstate Mrs. Saenz in direct contravention of section 31 of the City Charter which required him to perform all duties authorized or directed by the city council. At the July 19, 1974 meeting, Keaton requested a hearing on his dismissal. Such hearing was held on August 14, 1974. Keaton and his attorney were given full opportunity to demonstrate why he should not be removed for insubordination. Reviewing all the evidence we find that there is ample evidence of insubordination from which the council could have found Keaton to be insubordinate. This evidence for example, would be his refusal to carry out the mandate of the council to reinstate Mrs. Saenz when requested to do so. Appellant's first point of error is overruled.

Appellant next complains that the trial court erred in failing to grant the mandamus because his removal was a violation of his right of free speech. This point is totally without merit. The basis of Keaton's dismissal was his refusal to follow the directives of the city commissioners. The record in no way reflects that the basis for Keaton's removal was the publication of his position letter in the local newspapers. Unless there was a showing that this was the basis for his removal, no protected speech question is raised. No such finding was requested or found by the jury. Appellant's second point of error is overruled.

It is this Court's duty to affirm the trial court's judgment if it can be sustained on any theory suggested by evidence and authorized by law. *James v. Drye*, 159 Tex. 321, 320 S.W.2d 319 (1959); *Pearson v. Stevens*, 446 S.W.2d 381 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ); *Connor v. City of University Park*, 142 S.W.2d 706 (Tex.Civ.App.—Dallas 1940, writ ref'd). Since the trial court's judgment denying Keaton the relief of mandamus is based on the principles of law and is supported by the evidence set out herein, the judgment of the trial court must be affirmed.

AFFIRMED.