Joseph Kraftician, Appellant *v.* Borough of
Carnegie, Appellee.

Argued May 1, 1978, before Judges CRUMLISH, JR.,
WILKINSON, JR. and BLATT, sitting as a panel of three.

*Ronald P. Koerner,* with him *Gatz, Cohen, Segal &
Koerner,* for appellant.

*Stephen A. Zappala,* with him *Nathan T. Cohen,* and *Zappala & Zappala,* for appellee.

OPINION BY JUDGE WILKINSON, JR., May 24, 1978:

Appellant filed a complaint in assumpsit in the Allegheny County Court of Common Pleas seeking monetary damages for alleged wrongful discharge[1] when he was furloughed from his position as a police officer in the Borough of Carnegie (Borough). The lower court dismissed the complaint. We affirm.

The complaint stems from a resolution adopted by Borough Council on January 31, 1972, in which council resolved for economic reasons to furlough eight employees, including four firemen, two street department workers and two policemen. Appellant was subject to this furlough resolution as the oldest police officer on the force who was eligible for retirement.[2] He remained on furlough status from February 13, 1972, the effective date of the resolution, until May 5, 1973 when he was recalled. After his recall, appellant worked for a week before submitting his resignation. Prior and subsequent to the furlough the Borough employed three part-time extra policemen, designated by the Borough as "special police." Two of the police were primarily engaged in traffic control and pa-

---

[1] Appellant was furloughed. He resigned after being called back from furlough.

[2] This furlough was made pursuant to Section 1190 of The Borough Code (Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46190, which provides in pertinent part:

If for reasons of economy or other reasons it shall be deemed necessary by any borough to reduce the number of paid employes of the police or fire force, then such borough shall apply the following procedure: (i) if there are any employes eligible for retirement under the terms of any retirement or pension law, then such reduction in numbers shall be made by retirement of such employes, starting with the oldest employe. . . .

trol of the business district in the Borough and one was employed as a communications officer operating a base station coordinating police activity in the Borough and eight neighboring municipalities. Although these special police were not equipped by the Borough with standard police equipment such as a gun or handcuffs, they were permitted to carry their own such equipment.

The appellant has framed the issue on appeal to this Court as follows: "Can a municipality terminate the employment of a regular civil service police officer for alleged economy reasons while retaining special police with no civil service status?" We must answer, within the confines of the facts presented in this case and the applicable law, in the affirmative.

The Borough Code permits municipalities to reduce the number of their police or fire force, where required for economic or other reasons. *See* Section 1190 of the Code, 53 P.S. §46190. However, Section 1195 of the Code, 53 P.S. §46195, specifically excludes from this section extra or special police who are hired on a part-time basis. Thus, the Code does not require that, when reducing the complement of the police force, municipalities must include special police in making that determination.[3] Moreover, this Court has held with respect to similar provisions in the Police Tenure Act[4] that a municipality may reduce its police force for reasons of economy and efficiency even where the municipality hires non-civil service employees to perform some of the same clerical duties previously performed by police officers. *Gruver v. Howell*, 28 Pa. Commonwealth Ct. 296, 368 A.2d 920 (1977).

[3] It is interesting to note that on the facts of this case, appellant's furlough would have been required even if the special police were considered part of the force for furlough purposes.

[4] Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §811 et seq.

The only limitation imposed on the power of a municipality to act in the reduction of its police civil service work force for economy or other reasons is that it must act in good faith. Thus, where there is affirmative evidence of bad faith on the part of municipal officials or where the facts show a patent attempt to avoid or circumvent civil service provisions, our Courts have held a municipality's exercise of this power may be illegal. *See Schauer v. Whitehall Borough,* 413 Pa. 6, 194 A.2d 318 (1963) ; *Mack v. Hoover,* 342 Pa. 291, 20 A.2d 757 (1941). On the subject of bad faith and the degree of proof required for a police officer to prevail when challenging the reduction of a police force, this Court recently held that sufficient evidence of bad faith must be produced to rebut the presumption that public officials acted with regularity. *Gruver, supra; see also, Gabriel v. Trinity Area School District,* 22 Pa. Commonwealth Ct. 620, 350 A.2d 203 (1976). Here, there is little evidence in the record to suggest that Borough Council acted for any reason other than economy as compared with ample evidence the Borough faced severe budgetary problems in the year of the furlough. The mere fact that the Borough continued to employ special police to work only in a limited area of the Borough on a part-time basis is not sufficient to show an attempt to circumvent the civil service provisions of the Code and thus show the requisite bad faith on the part of Borough officials.

Appellant, however, suggests that this Court should extend the rulings in *Schauer, supra* and *Mack, supra,* to require that a municipality must, consistent with the Code's civil service provisions, first furlough extra police before reducing its civil service police force. We cannot agree. The Code clearly does not mandate this result since it makes specific provision that the mayor may appoint special police to perform certain

limited police functions and excludes these extra police from consideration in regular police civil service matters. *Compare* Section 1190 of the Code *with* Section 1195 of the Code. Thus, we believe the intent of the legislature is *contra* the position urged by appellant. Also, we do not believe the mere continued utilization of extra police must perforce operate to nullify or circumvent the civil service laws and protections accorded regular police officers. As the record in this case suggests, special or extra police are frequently employed by municipalities to perform only limited duties and are needed in a municipality during certain limited hours to complement the regular police force. Appellant's assertion that a municipality could circumvent the civil service laws by hiring special police and furloughing its regular police would be relevant under the rules established in *Schauer, supra,* and *Mack, supra.* However, as we have previously indicated such is not the case here.

Accordingly, we will enter the following

### Order

And Now, May 24, 1978, the order of the Court of Common Pleas of Allegheny County at No. 3443 October Term, 1973, dated February 24, 1976, is hereby affirmed.