**Bob G. BURKHART et al., Appellants,**

v.

**Jerry E. MOORE, Appellee.**

**No. 5259.**

Court of Civil Appeals of Texas, Eastland.

March 29, 1979.

Rehearing Denied April 26, 1979.

Merril E. Nunn, Asst. City Atty., Garland, for appellants.

Fred M. Baron, Dallas, for appellee.

Before McCLOUD, C. J., and RALEIGH BROWN and DICKENSON, JJ.

McCLOUD, Chief Justice.

The issue in this case is whether a classified civil service position was abolished in good faith.

On September 2, 1977, plaintiff, Jerry E. Moore, filed suit seeking a writ of mandamus directing the defendants, Bob G. Burkhart, Garland Firemen's and Policemen's Civil Service Commission, and the City of Garland, to appoint and certify him to the position and pay of a "Battalion Chief" in the City of Garland Fire Department. The defendants answered that the City Council of the City of Garland on September 6, 1977, enacted Ordinance No. 2855 which abolished the position plaintiff sought. Following a nonjury trial, the court rendered judgment issuing a writ of mandamus directing defendants to immediately promote, appoint, and certify plaintiff to the position and pay of a Battalion Chief in the Garland Fire Department. The judgment recites that Ordinance No. 2855 was not enacted in "good faith" and is void. Defendants have appealed. We affirm.

In 1976, the City initiated a study to implement emergency medical services by the Garland Fire Department. The Fire Chief, Bob G. Burkhart, and Donald E. Paschal, Jr., the Community Services Administrator for the City, undertook the study which was extensive and took several months. An emergency medical services system was formulated by Burkhart and Paschal with the assistance of Captain Gordon Smythe, who had been assigned by Chief Burkhart to help with the project from the inception. On April 1, 1977, the emergency medical services program was implemented by the City, and on April 5, 1977, the City passed Ordinance No. 2785, which created twenty-two additional positions in the fire department to handle the emergency medical services. One of the positions created was "Battalion Chief," which is one step above "Captain." Paschal and Burkhart testified that the preliminary study indicated that a Battalion Chief should supervise the unit.

On May 3, 1977, plaintiff, who was at that time a Captain, along with other persons, including Captain Gordon Smythe, who had supervised the emergency medical services unit since its inception, took an examination for the newly created Battalion Chief position. Plaintiff made the top grade on the examination which required that his name be placed first on the promotion list. Plaintiff was not promoted to the Battalion Chief position created by Ordinance No. 2785, and Captain Smythe continued to supervise the emergency medical services unit. On September 6, 1977, the City Council passed Ordinance No. 2855, which abolished the Battalion Chief position and created a new Captain position. The abolishing ordinance stated that it had been determined by "experience" that the additional position of Battalion Chief was not necessary to supervise the "Emergency Medical Services," and that the supervising function could be fulfilled by the position of "Captain."

No person was promoted to the position of Battalion Chief within 90 days from the date the ordinance was passed creating the new classified position. The parties agree that plaintiff, who made the highest grade on the examination, was, as a matter of law, entitled to the position before the abolishing ordinance was passed on September 6, 1977. Tex.Rev.Civ.Stat.Ann., art. 1269m § 8 (1963).

The City Council of the City of Garland had the right to abolish the Battalion Chief's position, to which plaintiff was entitled, provided it did so in good faith. *City of San Antonio v. Wallace,* 161 Tex. 41, 338 S.W.2d 153 (1960). In *Wallace,* the court held there could be a judicial inquiry as to whether a city council's action was a "good faith" action. The court concluded that the question in Texas would be "one of law" for the judge's decision. The court said:

McQuillin recognizes the general rule that, "(W)here a municipal corporation under charter or legislative act has power to create by ordinance an office, it also has the power to abolish it." McQuillin, Municipal Corporations § 12.118. However, when civil service and veterans preference laws are involved, the action of the city council must be taken in good faith to effect an economy in operations or a betterment of municipal service as "There is a real and fundamental distinction between the lawful abolition of an unnecessary position and the discharge of a faithful employee in violation of the rights secured to him by statute; and the latter action can neither be concealed nor protected by a pretense that it was in the exercise of the former right." McQuillin § 12.119 quoting from *Garvey v. City of Lowell,* 199 Mass. 47, 85 N.E. 182 and *Murphy v. Justices of Municipal Court,* 228 Mass. 12, 116 N.E. 969. If the attempt to abolish an office be merely colorable and the real objective be to legislate one out of office or a civil service position, the courts are not bound by the apparent form of the action but will disregard the pretense and be governed by the substance of the action. McQuillin § 12.121; *Smith v. Sells,* 156 Tenn. 539, 3 S.W.2d 660. Tenure of office and civil service laws cannot be evaded by a sham or pretended abolishment of position.

. . .

The court added:

We do not wish to be understood as holding that the secret motives of members of the City Council are matters for judicial inquiry. If an action be proper as an economy move, it would not be rendered otherwise, because a member of a city council derived some malicious pleasure because a particular individual lost his job. *Rossi v. Mayor and Council of Borough of Moonachie,* 127 N.J.L. 374, 22 A.2d 564. The authorities however do support the proposition that an action of a city legislative body abolishing civil service positions may be judicially examined in the light of its surrounding circumstances, the prior and subsequent actions of such legislative body and the public policy represented by the civil service law in order to determine the good faith of the questioned action.

The court recognized that "good faith" would exist, as a matter of law, upon a proper showing that the civil service position was abolished because of improved economy or increased efficiency. The court further noted that if the evidence showed that the action was a proper economy or efficiency move, then the secret motives of the members of the City Council would be of no consequence. It is clear from *Wallace,* and the authorities discussed in 87 A.L.R.3d 1165 that a crucial inquiry in determining good faith, is whether the duties of the abolished position were assigned to another person or position.

The defendants were required to plead and prove good faith in abolishing the Battalion Chief position. The recital in the preamble of the abolishing ordinance does not meet that burden. The court in *Kiel v. City of Houston,* 558 S.W.2d 69 (Tex.Civ. App.—Houston (14th Dist.) 1977, writ ref'd n. r. e.) said:

Such a self-serving declaration does not meet the City's burden. The supreme court's decision in *Wallace* indicates that the City must produce pertinent facts relating to the economy and efficiency of the change. *City of San Antonio v. Wallace,* 338 S.W.2d at 158. Even if the City had produced live witnesses to state that the action was taken for proper purposes, it would not have been sufficient; the City should have proved that the jobs were unnecessary and shown why it would be more satisfactory to the public

if they were abolished. *Welch v. Overton,* 416 S.W.2d 879 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.).

The good faith requirement is discussed in 15 Am.Jur.2d, Civil Service § 72 as follows:

> The civil service laws cannot be evaded by a sham or pretended abolition, as where the incumbent of an office is ousted, a colorable change made in the title of the office, and another person appointed to perform substantially the same duties. Thus, the authorities will not be permitted, under the pretense of abolishing a civil service office, to discharge an employee and immediately create another office with substantially the same duties, appointing a different individual to fill it.
>
> . . .

Paschal testified that it did save the City some money to keep the supervisory position as a "Captain," but he said that the saving was "not much." There is no real contention made that the abolition was an economy move. The defendants' position is principally that the supervisory function can be fulfilled by a "Captain" and the created position of "Battalion Chief" is not necessary. Paschal testified that he could not say the emergency medical services unit functioned "better" under a Captain. He stated only that in his opinion it functioned "equally as good" under a Captain, and they did not see "how it could have been improved by changing the rank" to Battalion Chief. The record shows that the members of the City Council, when they voted to abolish the position, were furnished with a memorandum from Paschal, which provided:

> The attached Ordinance reduces by one the number of Battalion Chiefs authorized in the Fire Department and increases by one the number of Captains. The referenced Battalion Chief's position was originally created as the supervisory position over the Emergency Medical Services Division. When initially formed the EMS Division was headed by a Fire Captain, who has continued to supervise the division up to the present. As a result of a very smooth program implementation and continued operational effectiveness, it is recommended that the supervisory rank of Captain be retained for the division at this time.

There is no evidence that the members of the City Council considered any recommendations or information other than the Paschal memorandum.

The evidence shows that Chief Burkhart and Paschal felt strongly that Captain Smythe was the best qualified person since he had the most experience. If plaintiff were promoted to Battalion Chief, there would be no place in the emergency medical services unit for Captain Smythe. Also, there is evidence that between May 3, 1977, and September 6, 1977, the plaintiff, as president of the Garland Firefighter's Association, testified adversely to the City and Chief Burkhart in a "Federal" lawsuit. Plaintiff stated that since the date he testified adversely, the Chief has not "talked" to him.

The trial court could have properly concluded from the evidence the City created a Captain's position which consisted of duties identical to those which were to be performed by the abolished Battalion Chief. After the Battalion Chief's position was abolished, another officer, Captain Smythe, has performed the duties which were to be performed by the Battalion Chief. The testimony of Paschal and Chief Burkhart, who were interested witnesses, was not conclusive. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company,* 391 S.W.2d 41 (Tex.1965).

The record supports the trial court's conclusion that the abolishing ordinance was not enacted in good faith. We have considered all points of error and all are overruled. The judgment of the trial court is affirmed.