[Civ. No. 34295. First Dist., Div. Four. June 23, 1975.]

SAM GOLDEN, Plaintiff and Appellant, v.
CITY OF OAKLAND, Defendant and Respondent.

**COUNSEL**

Carroll, Burdick & McDonough and Christopher D. Burdick for Plaintiff and Appellant.

David A. Self, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**CALDECOTT, P. J.**—Plaintiff and appellant, Sam Golden, individually and as president of International Association of Fire Fighters Local 55,

brought this action against defendant and respondent City of Oakland for declaratory relief relative to his rights and those of similarly situated union members under City of Oakland Ordinance No. 8022 C.M.S. The complaint sought a declaration of plaintiffs' rights in regard to the number of calendar days of vacation and sick leave to which they were legally entitled.

Plaintiffs sought a declaration that they were entitled to a minimum of 15 working days' vacation (a working day for a fireman being a 24-hour shift) with pay, and at least 60 working days sick leave with full pay and 60 additional working days at one-half pay. Plaintiffs also sought credits for past denials of these alleged rights and a full accounting.

Judgment was entered against plaintiffs, the court holding that they were not entitled to any greater vacation or sick leave allowances than they were presently receiving.

I

The central issue on appeal is the trial court's construction of ordinances Nos. 8022, 7684 and former charter section 100 of the City of Oakland. Appellants contend that because ordinance No. 8022 C.M.S. speaks in terms of "working days" for firefighters' vacations, the only question left for this court is to determine what the duration of a working day was for an Oakland firefighter. Once determined, appellants argue that they are entitled to 15 of those days, whatever their length, for their annual leave. Appellants further contend that since firemen work 24 hours on one day, and are off duty for the next 48 hours, two out of every three days of their vacation must be allocated to their normal days off; thus to achieve a vacation of 15 working days, firefighters would, pursuant to the above interpretation, have to receive 45 calendar days' vacation.

Central to appellants' argument is their contention that "No matter how ridiculous the Court may feel the net result . . . [is] of interpreting the legislative language as it is written, it is the duty of the Courts to interpret a statute which is clear and unambiguous on its face as the statute is written." The failure of this argument lies in the fact that it advocates the use of a mechanistic formula approach to statutory construction which cannot be sustained.

Questions relating to the interpretation of statutes are matters of law for the court. (*Hall* v. *City of Taft,* 47 Cal.2d 177, 188 [302 P.2d 574].)

The ultimate interpretation of statutes is an exercise of the judicial power (*Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321 [109 P.2d 935]) and it is the duty of the courts within the framework of the statutes, to interpret them so as to make them workable and reasonable (*Burns* v. *Massachusetts etc. Ins. Co.,* 62 Cal.App.2d 962 [146 P.2d 24]).

What appellants are arguing on this appeal is that the ordinances are unambiguous and clear on their face and the fact that the lower court did not agree with the wisdom of the enactment (according to appellants), did not justify its ignoring the allegedly plain and unambiguous language contained therein.

■ As a general matter, it is true that the rules relating to the construction of statutes are applicable only where the statutory language is uncertain and ambiguous (*Scott* v. *McPheeters,* 33 Cal.App.2d 629 [92 P.2d 678, 93 P.2d 562]; *Copeland* v. *Raub,* 36 Cal.App.2d 441 [97 P.2d 859]). Thus, where the meaning of a statute is plain, its language clear and unambiguous, and there is no uncertainty or doubt of the legislative intent, there is no need for construction and courts should not indulge in it (*Caminetti* v. *Pac. Mutual L. Ins. Co.,* 22 Cal.2d 344, 354 [139 P.2d 908], cert. den., 320 U.S. 802 [88 L.Ed. 484, 64 S.Ct. 428]).

However, as stated in *County of Sacramento* v. *Hickman,* 66 Cal.2d 841 [59 Cal.Rptr. 609, 428 P.2d 593]: "We disagree . . . with respondent's sweeping assertion that in all cases 'ambiguity is a condition precedent to [statutory] interpretation.' Although this proposition is generally true, 'The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' " (*Id.,* at p. 849, fn. 6, quoting *Silver* v. *Brown,* 63 Cal.2d 841 at p. 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

■ Appellants place great reliance on the fact that ordinance No. 8022 C.M.S. uses the term "working days" whereas its predecessor, charter section 100[1] speaks only of "days." However, they neglect to consider

[1]"Sec. 100. Each member of the Fire Department shall be entitled to fifteen days vacation annually with full pay; such vacation shall be had at such time as the Chief of the Fire Department shall direct. Each member of the Fire Department shall be allowed a leave of absence, with full pay, of not less than twenty-four hours duration every fifth day. A member becoming incapacitated for duty by reason of sickness shall be entitled to sixty days sick leave without loss of pay. If such sickness shall continue, he shall be entitled to half-pay for an additional period of sixty days, and if such sickness shall continue further, he shall receive such pay, if any, as the Council shall direct. A member on sick leave shall present such certificate of a reputable physician as the Chief of the Fire Department may direct."

(1) the circumstances under which ordinance No. 8022 was enacted; (2) the fact that No. 8022 embraces firefighters, electrical workers, and policemen, using the term "working days" as to each; (3) the historical parity of benefits enjoyed by firefighters and policemen as exemplified by the administrative decision regarding firemen's vacation rights rendered after the judicial decision in O'Connell v. City of Oakland, concerning policemen's vacation rights; and (4) the absurdities that necessarily emanate from their proffered construction. Taken together, the conclusion is inescapable that the trial court was correct in construing the statute as it did.

Ordinance No. 8022 C.M.S.[2] was adopted on August 19, 1969, by the city council, effective January 28, 1969. This retroactive application is significant. From 1920 to 1969 vacations for firemen and policemen were provided for by the Oakland City Charter in section 92 and section 100 respectively. The charter contained identical vacation and sick leave provisions for policemen and firemen, to wit, "fifteen days vacation annually with full pay" and "sixty days sick leave without loss of pay."

On January 28, 1969, when the new charter was passed, it did not contain provisions for vacation, sick leave, etc., for firemen, electrical workers and policemen. Ordinance No. 8022 notes the above omission and counsel for appellants stipulated at trial as follows: "We can stipulate that . . . [the ordinance] was intended to prevent any hiatus in the law so that the men would be entitled to—entitled to a vacation. If you want to stipulate to that. [Counsel for respondent]: Okay."

The significance of the above discussion lies in the fact that it indicates a legislative purpose of continuity not change in the benefits of municipal employees. Stated otherwise, the addition of the adjective "working" to the word "days" in the former charter appears to be no

---

[2]
"ORDINANCE NO. 8022 C.M.S.
"ORDINANCE PROVIDING VACATION AND SICK LEAVE BENEFITS FOR MEMBERS OF THE POLICE DEPARTMENT, THE FIRE DEPARTMENT, THE ELECTRICAL DEPARTMENT, AND THE ELECTRICAL INSPECTION DIVISION.
"WHEREAS, members of the Police, Fire, and Electrical Departments received certain vacation and sick leave benefits under provisions of the prior charter; and
"WHEREAS, the duty of making rules governing vacations and sick leave for members of said departments and for members of the Electrical Inspection Division has not been delegated to the Civil Service Board by the provisions of Ordinance No. 2584 N.S., or of any amendment thereto, or otherwise; now, therefore:
"The Council of the City of Oakland does ordain as follows: . . . ."

more than reflection of the city council's recognition of the O'Connell decision and its administrative progeny relative to firemen.

This conclusion is buttressed by the fact that ordinance No. 8022 C.M.S. embraces all three groups (firemen, policemen and electrical workers) of municipal workers and prescribes identical vacation and sick leave benefits for each. Firemen and policemen historically enjoyed identical benefits in this regard and to construe ordinance No. 8022 as increasing starting firemen's vacations to almost 45 calendar days, while prescribing no such increase for policemen (and electrical workers) is an unjust and unintended result.

In addition, section II of ordinance No. 8022 C.M.S. subsection B states "Nothing herein shall affect vacation rights heretofore granted under Ordinance 7684 C.M.S." Ordinance No. 8022, in regards to policemen and firemen merely sets the minimum vacation allowances of *beginning* policemen and firemen. Ordinance No. 7684 provides:

"AN ORDINANCE ADDING SECTION 3 TO ORDINANCE NO. 2584 N.S., AS AMENDED, GRANTING MEMBERS OF THE FIRE DEPARTMENT ADDITIONAL VACATIONS BASED UPON YEARS OF SERVICE.

"BE IT ORDAINED by the Council of the City of Oakland, as follows: SECTION 1. Section 3 is hereby added to Ordinance No. 2584 N.S., as amended by Ordinance No. 5272 C.M.S., and Ordinance No. 7514 C.M.S., which section shall read as follows:

"SECTION 3. In addition to the annual vacation to which the officers or members of the Fire Department are entitled pursuant to Section 100 of the Charter, each such officer or member who has served fifteen (15) continuous years shall be entitled to three (3) days' vacation or a total of eighteen (18) days' vacation annually, and each such officer or member who has served twenty (20) continuous years shall be entitled to five (5) days' vacation or a total of twenty (20) days' vacation annually."

It is noteworthy that this ordinance does not use the term "working days" alleged by appellant to be of such significance in ordinance No. 8022.

When the city council adopted ordinance No. 7684,[3] its obvious purpose was to reward longevity by allowing senior firemen additional vacation

---

[3]The council also adopted ordinance No. 7514 relating to policemen and providing longer vacations for officers with seniority at the same time.

days. However, ordinance No. 8022 explicitly states that it does not affect ordinance No. 7684. The result of the interpretation placed by appellant on No. 8022 would be to give *beginning* firemen longer vacations than seasoned veterans (45 calendar days versus a maximum of 30 calendar days which is the vacation period enjoyed by a 20-year veteran of the department). In short, the foregoing result cannot be accorded judicial approval.

It was the primary responsibility of the court below to ascertain the legislative intent behind ordinance No. 8022 (McQuillin, Municipal Corporations, § 20.56, p. 147). A literal abstract reading of said ordinance results in absurd consequences at cross-purposes with long-standing traditions of parity enjoyed by municipal workers in the City of Oakland. Whether we follow the language in *County of Sacramento* v. *Hickman, supra,* 66 Cal.2d at page 849, or hold that the term "working days" as used in the ordinance is ambiguous (because as applied to firemen it leads to startlingly different results than when applied to policemen and electrical workers), extrinsic evidence was properly resorted to by the court below. "An ordinance is to be construed in the light of the surrounding circumstances and conditions under which it was enacted, as well as the purposes sought to be attained by it, in order to dispel doubtfulness or ambiguity in its meaning, and to determine and effect the expressed legislative intention." (McQuillin, Municipal Corporations, § 20.46, p. 122.) When the language of a statute is unclear, the intent of the Legislature is to be ascertained from all the circumstances and from the consequences that flow from the various interpretations of the act. (*Estate of Ryan,* 21 Cal.2d 498, 513 [133 P.2d 626]; *Pulcifer* v. *County of Alameda,* 29 Cal.2d 258 [175 P.2d 1].) Substance rather than form should be considered if strict adherence to form would result in injustice, or absurd and unjust results would follow from a literal interpretation of the language. (*Dempsey* v. *Market Street Ry. Co.,* 23 Cal.2d 110 [142 P.2d 929]; *Kennard* v. *Rosenberg,* 127 Cal.App.2d 340 [273 P.2d 839].) As stated in *Jordt* v. *State Board of Education,* 35 Cal.App.2d 591, 595 [96 P.2d 809]: ". . . 'the primary rule of intention is to be first applied', and 'that the courts will not blindly follow the letter of a law, when its purpose is apparent.' "

The trial court properly considered contemporary administrative constructions of the various ordinances and charter provisions as well as the financial impact on the city if appellants' contentions were accepted (see e.g., *Estate of Ryan, supra,* 21 Cal.2d 498). In addition, it could take judicial notice (Evid. Code, § 452, subd. (h)) of the fact that beginning

firemen nowhere received vacations of 45 calendar days. The trial court correctly construed the ordinance in question.[4]

## II

Appellants argue that the city was collaterally estopped to deny the applicability of "working days" in the interpretation of vacation and sick leave benefits due firefighters because of the decision in O'Connell v. City of Oakland, Alameda County action No. 278707. We need not belabor this point other than to note that it lacks merit.

■ It is fundamental that the effect of a judgment as constituting a collateral estoppel is limited to those issues that are actually litigated (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 198, p. 3336). The only issues litigated in O'Connell related to the construction of former section 92 of the City Charter of Oakland. The meaning ascribed by the trial court to the word "days" as it related to policemen, was within the framework of the *eight-hour day, five-day week* worked by policemen. The decision nowhere discusses either implicitly or explicitly the two or three 24-hour days per week worked by firemen. Sick leaves, either for policemen or firemen were also outside the issues in O'Connell.

The significance of the O'Connell decision lies less in what it said than in what was done by the city after it was decided. Immediately following the judgment, the City of Oakland granted policemen 15 working days' or 21 calendar days' vacation. The mayor of Oakland then advised the fire chief that the fire department was to receive the same benefits as policemen namely 21 calendar days annually. The historical parity between the departments was clearly shown by such an action and said action casts further doubt on appellants' present assertions which would grant firemen far greater vacation (and sick leave) benefits than other uniformed city personnel.

## III

Appellants' final argument challenges the legal propriety of the trial court's finding of laches and estoppel on the part of appellants. They argue that such a finding is legally inappropriate in an action at law for

[4]The foregoing applies with equal force to appellants' arguments re: sick leave (appellants' fourth cause of action concerns this point). Under appellants' interpretation, firefighters would be entitled to up to 270 days of sick leave. We reject this argument for the reasons discussed above.

declaratory relief and even if appropriate, that said finding is not supported by substantial evidence.

The doctrine of laches is available against a claim for declaratory relief. (*Empire W.S.I. Dist.* v. *Stratford I. Dist.,* 10 Cal.2d 376 [74 P.2d 248].) The defenses of waiver, estoppel and laches were set forth in respondent's answer.

We need not reach the substantiality of the evidence in support of said findings because we agree with the trial court's substantive interpretation of the ordinances and its conclusion that appellants were and are receiving all of the vacation and sick leave benefits to which they are statutorily entitled. In any event, substantial evidence in support of said findings clearly exists.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.