**CITY OF WICHITA FALLS, Appellant,**

v.

**Jerry W. HARRIS et al., Appellees.**

**No. 17662.**

Court of Civil Appeals of Texas, Fort Worth.

Dec. 19, 1975.

Rehearing Denied Jan. 23, 1976.

H. P. Hodge, Jr., City Atty., Wichita Falls, for appellant.

Neely & Mason, and Tom Neely, Wichita Falls, for appellees.

## OPINION

SPURLOCK, Justice.

This a suit by eight members of the Wichita Falls Fire Department against the City seeking a judgment (1) to annul and void an appointment of a Training Officer or Fire Training Specialist hired without competitive examination in violation of the terms and provisions of Article 1269m, V.A.C.S., "Firemen's and Policemen's Civil Service Act"; (2) declaring that six plaintiffs were entitled to receive sick pay for one day when they are absent from work on account of sickness; (3) requiring the Firemen's and Policemen's Civil Service Commission to inspect all institutions, departments, offices, places, and positions of employment affected by this Act once each year, all as is required by Art. 1269m, V.A.C.S.; and (4) setting aside the disciplinary suspension of plaintiff, Jerry W. Harris.

Trial was before the court and resulted in a take-nothing judgment for that part of the suit brought by 6 firemen for their sick pay. The judgment further ordered the Civil Service Commission to inspect all institutions, departments, offices, places, positions, and employments affected by the Act in accordance with the terms of Art. 1269m, Section 5a, V.A.C.S. The order of the Fire Chief suspending Harris was found to be in violation of law and was voided. The appointment by the Fire Chief of the Fire Training Specialist was voided.

We affirm.

■ By its first point, the City asserts that the trial court erred in declaring that the action of the City in creating the position of Fire Training Specialist as non-classified under Article 1269m, V.A.C.S., was void.

We overrule this point.

The City contends that it could not fill the Civil Service position described as "Fire Training Officer" by Civil Service examination. It then created and filled a non-Civil Service position described as "Fire Training Specialist" to take the place of the Fire Training Officer position. It contends that this act was not void.

The City, by Ordinance, created a position of Fire Training Officer and a fireman was pointed to this position in June of 1967. Thereafter, various persons were appointed to this position and most requested a demotion. These requests were granted. One fireman held the position for 3 years; several held the position only a matter of 3 to 6 months. In 1974 the examination was limited to Captains and Lieutenants and no one made application to take the examination. In 1974 only two applied, but at this time the examination was limited to Captains. There are only 9 Captains in the Fire Department. On May 7, 1974, the examination was open to Captains, Lieutenants, and fire equipment operators, but only 3 took the examination, and only one passed. This was the last examination given. Originally the position was held by a battalion chief.

Thereafter, by memorandum written by the City Manager of the City, there was created a classification of Fire Training Specialist in the Fire Department and it was noted that such position would replace the Fire Training Officer. This meant that a Civil Service position was abolished and a non-Civil Service position was created to take its place. The present occupant of that position was employed before the job was created by the legislative body. He was employed without an examination. Thereafter, the Board of Aldermen passed an ordinance purporting to abolish the Civil Service classification and created the non-Civil Service classification.

The job descriptions of both positions require that a person holding the position must have knowledge of the principles and practices of fire prevention and suppression.

The Fire Training Specialist is paid by the Fire Department, drives a Fire Department vehicle, attends fires, has an office in the fire station, and the Fire Chief is his supervisor. He attends the City's rookie fire school and he is responsible for organizing and implementing the tactical attack on fires when they break out.

Mr. Caussey, who now holds this position, has a Bachelor of Science Degree in History and Social Studies and a Masters Degree in Education. The City contends his primary duty is that of an instructor who has developed skills in communication, education, and evaluation of knowledge and that he is not a firefighter.

A history of this legislation and the effect of the amendment of 1957 can be found in *City of San Antonio v. Handley*, 308 S.W.2d 608 (San Antonio Civ.App., 1957, ref.); *City of Wichita Falls v. Cox*, 300 S.W.2d 317 (Fort Worth Civ.App., 1957, ref., n. r. e.); *City of San Antonio v. Castillo*, 293 S.W.2d 691 (San Antonio Civ.App., 1956, ref., n. r. e.); *Whitley v. City of San Angelo*, 292 S.W.2d 857 (Austin Civ.App., 1956, no writ hist.); and *Cox v. Purcell*, 306 S.W.2d 814 (Fort Worth Civ.App., 1957, no writ hist.).

The definition of "Fireman" is contained in Article 1269m, V.A.C.S., Sec. 2, and defined as: "By the term 'Fireman' is meant any member of the Fire Department appointed to such position in substantial compliance with the provisions of Sections 9, 10 and 11 of this Act, or entitled to Civil Service Status under Section 24 of this Act."

Sections 9, 10 and 11, referred to above, provide for examination, the filling of a position based upon the eligibility list following examination, and the certification of such person to the Fire Department. In other words, a fireman is a person who has passed an examination for fire-fighting and work in the Fire Department and has made a high enough grade to be certified and has been certified as a fireman. Section 24, referred to above, is the grandfather clause which provides that at the time of the passage of the Act firemen in actual service of an affected city shall have Civil Service status.

If the Act is construed strictly it would mean that the City could employ new firemen who would not be under Civil Service by simply not giving them an examination. The City acknowledges that this is obviously not the intent of the legislature.

An analysis of the job classification contained in the City's ordinances show the positions of Fire Training Officer and Fire Training Specialist to be almost identical.

Section 9 of the Act provides that the Civil Service Commission *shall* hold open and competitive examinations for persons making application. It further provides: "All eligibility lists for applicants for original positions in the Fire and Police Departments shall be created only as a result of such examinations, and no appointments shall ever be made for any position in such Departments except as a result of such examination, which shall be based on the applicant's knowledge of and qualifications for fire fighting and work in the Fire Department, . . . ." (Emphasis ours.)

The Act further provides (Section 14 G): "In the event any new classification is established either by name or by increase of salary, the same shall be filled by competitive examination in accordance with this law."

In the *City of San Antonio v. Wallace*, 161 Tex. 41, 338 S.W.2d 153 (1960) that court had before it a situation in which Civil Service positions were abolished and the work was done by an independent contractor and its employees. In construing this Act that court stated that while there is a presumption favoring the regularity of official acts, this presumption should not be extended in civil service cases so as to support the position urged by the City in that case. That court further stated: "While the City of San Antonio is a home rule city, Article 11, § 5 of the Texas Constitution, Vernon's Ann.St. (the home rule amend-

ment) expressly provides that 'no [City] charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * *.' Should we close the doors against a judicial inquiry into the element of good faith in municipal action, a colorable or sham ordinance could render an express constitutional provision impotent and meaningless. The policy of the state, as reflected in its civil service statutes, would be at the mercy of municipal action. In this situation, the courts in carrying out state policy must consider the element of good faith in passing upon the validity of municipal actions.

" . . . The authorities however do support the proposition that an action of a city legislative body abolishing civil service positions may be judicially examined in the light of its surrounding circumstances, the prior and subsequent actions of such legislative body and the public policy represented by the civil service law in order to determine the good faith of the questioned action." That court further stated that the public policy of the state as evidenced by its civil service law, which is to place municipal employees for the most part upon a merit system and free them from political control, cannot be circumvented and the court will scrutinize carefully any attempt to do so.

In the case of *Loos v. City of Houston*, 375 S.W.2d 952 (Houston Civ.App., 1964, ref., n. r. e.) the trial court and the City of Houston assumed that Arson Investigators were firemen. This point was not decided in that case. The duties of an Assistant Arson Investigator is normally to determine the cause of a fire rather than to fight fires.

After the trial court had heard all the evidence it found that the position of "Fire Training Specialist" is a "Fireman" within the meaning of Section 2 of Article 1269m, V.A.C.S. The judgment further provided that the action of the City in purporting to create this new position within the Fire Department did not comply with the Act

because it created a non-classified position and therefore it is null and void. The Court further ordered that the City shall comply with the Act in the appointment and employment of a person to the position of Fire Training Specialist which is a classified position and that such position is now vacant.

Evidence is sufficient to sustain the trial court's judgment that the new Civil Service position comes under Civil Service and therefore the filling of this position without competitive examination was unauthorized.

We also note that in a similar situation the City of Amarillo filled a position of a Training Officer for the Fire Department by simply selecting from among its classified personnel a person qualified to instruct other firemen. To do so the City, by ordinance, simply abolished the classification of "drill master" and the Fire Chief then assigned those instructional duties to a qualified fireman without creating a new classification and without holding an examination. That court upheld this procedure. *Wortham v. City of Amarillo*, 493 S.W.2d 597 (Amarillo Civ.App., 1973, ref., n. r. e.). There is no evidence in the case at bar that the City did not have within its Fire Department a person capable of instructing other firemen.

■ It is our opinion that a person holding the position of Fire Training Specialist and having the duties imposed upon him as reflected by the record is a "Fireman" within the intent of Art. 1269m, V.A.C.S.

By its second point of error, the City contends that the trial court erred in declaring void the action of the City in creating the position of Fire Training Specialist for the reason that the ruling of the Civil Service Commission upholding such action was reasonably supported by substantial evidence.

This point is overruled.

In the case of *City of San Antonio v. Wallace*, supra, that court stated that some courts regard the issue of whether or not an

ordinance abolishing a civil service office must be made in good faith is ordinarily a question of fact to be determined in the same way as any other factual problem. It was noted therein that some courts regard the issue as a question of law. The court then proceeded to adopt the view that this is a law question rather than a fact issue.

In Volume 24, Southwestern Law Journal, pages 216–221, Administrative Law, Professor David M. Guinn, states: "While results in the cases varied, in none of the opinions did the courts place any considered emphasis upon the agency analysis, statutory interpretation being a question of law upon which the courts may properly substitute their judgment for that of the agency." See also *City of Houston v. Reyesi*, 527 S.W.2d 489 (Houston Civ.App., 1st Dist., 1975, no writ hist.).

■ It is our opinion that the Civil Service Commission had before it only a question of law and not a fact question. The Commission is not authorized to construe a statute or an ordinance, and decide a question which is purely one of law.

■ By its third point of error the City asserts that the trial court erred in ordering the Civil Service Commission to make annual inspections, for the reason that such provisions in Section 5a of Article 1269m is directory rather than mandatory.

This point is overruled.

Section 5a of the Act provides as follows: "The Commission *may* make investigations concerning, and report upon all matters touching, the enforcement and effect of the provisions of this Act, and the rules and regulations prescribed hereunder; *shall* inspect all institutions, departments, offices, places, positions and employments affected by this Act at least once every year; . . . ." (Emphasis ours.) When the legislature used the word "may" in the introductory phase of this section and the word "shall" in regard to inspections, then the intent of the legislature becomes plain. It is a mandatory requirement.

In *Jaynes v. Lee*, 306 S.W.2d 182 (Texarkana Civ.App., 1957, no writ hist.), it is stated: "Statutes and rules are permissive or mandatory, governed by the intent of the Legislature, Congress, or the governing body that enacts the statute or promulgates the rule. When the intent clearly indicates that the word 'shall' as used in such statute or rule was intended to be mandatory, then it is clearly inconsistent with any idea of discretion and is mandatory." See also *State Board of Insurance v. Betts*, 158 Tex. 612, 315 S.W.2d 279 (1958).

It is our opinion the clear connotation of the word "shall" preceded by the use of the word "may" indicates the legislature's intent that the duty to inspect is mandatory.

The City, by its 4th and 5th points of error, complains of the trial court's alleged error in refusing to dismiss Harris' appeal. It maintains the court was without jurisdiction because the Civil Service Commission's refusal to review his temporary suspension was not appealable under the Firemen's and Policemen's Civil Service Act.

We overrule points 4 and 5.

By letter addressed to the Commission, the Fire Chief suspended "Firefighter Jerry W. Harris for fifteen (15) working days, effective at 8:00 a. m., Friday, September 20, 1974 and until 8:00 p. m. Sunday, October 13, 1974." This a period of 23 calendar days. The suspension was based upon an oral complaint of Caussey, the Fire Training Specialist.

The Civil Service Commission refused a hearing even though a hearing was requested by Harris. On trial of the case in district court the record reflects that Caussey, by circumstantial evidence, thought that Harris had written an obscene word in the dust on Caussey's pickup truck. Several witnesses testified that he did not write such a word on the pickup truck. The trial court found that Harris did not commit the act made the basis of his suspension.

■ It is well settled law in this State that if the Act does not provide for an

appeal from an order of the Commission, then the administrative action of the Commission is final and the courts have no jurisdiction to hear an appeal unless the administrative action complained of violates a constitutional provision. This rule was applied in connection with the grading of examination papers involving the promotion of a fireman. *Firemen's & Policemen's Civil Serv. Com'n v. Kennedy,* 514 S.W.2d 237 (Tex.Sup., 1974). See also *Firemen's and Policemen's Civil Service Commission of the City of Fort Worth v. Richard L. Williams,* Vol. 19, No. 9, The Texas Supreme Court Journal, p. 81 (November 29, 1975). This rule was also followed in *City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788 (1951) involving the demotion of a fireman before the Act was amended concerning demotions.

■ Section 20 of the Act provides that the Fire Chief " . . . shall have the power to suspend any officer or employee under his jurisdiction or supervision for disciplinary purposes, for reasonable periods, not to exceed fifteen (15) days . . . ." This section provides further that the Chief shall file a written statement of the action with the Commission within a designated time and the Commission shall have the power to investigate and to determine whether just cause exists therefor. The Commission has the power to set aside the order of suspension. No provision is made requiring the Commission to hold a hearing and no right of appeal from its order is afforded by that section.

Section 16 provides that the Fire Chief has the power to *suspend indefinitely* any fireman. This section also provides for the filing of a statement with the Commission giving the reasons for the suspension and "immediately furnish a copy thereof to the officer or employee affected by such act, said copy to be delivered in person to such suspended officer or employee by said department head." This section further provides that the order of suspension shall also inform the employee that he has 10 days after receipt of a copy thereof, within which to file a written appeal with the Commission. This section provides for a hearing.

Section 16a states that the purpose of this Act is to secure to the cities affected thereby efficient Fire Departments, composed of capable personnel, free from political influence, and with permanent tenure of employment as public servants. It states: "The members of the Civil Service Boards are hereby directed to administer the civil service law in accordance with this purpose; and when sitting as a board of appeals for a suspended or *aggrieved employee,* they are to conduct such hearing fairly and impartially under the provisions of this law, and are to render a fair and just decision, considering only the evidence presented before them in such hearing." (Emphasis ours.)

Section 17 provides for the procedure before the Commission.

Section 18 provides for an appeal by filing a petition in the district court "asking that his order of suspension or dismissal or demotion be set aside, that he be reinstated in the Fire Department . . . ."

■ It is clear that a *disciplinary suspension* for a greater period of time than 15 days then becomes an *indefinite suspension.*

It is equally clear that if Lt. Harris was not afforded his procedural rights provided by statute he was denied due process.

The question then presents itself: Does a "suspension of 15 days" mean "15 successive calendar days" or "15 working days" within the meaning of the Act?

In *New Orleans Fire. Ass'n Loc. v. City of New Orleans,* 263 La. 649, 269 So.2d 194 (1972) that court had before it an action by the City firemen in which they were contending that a statute providing that firemen shall be entitled to vacation of 18 days with full pay after one year of service which period shall be increased one day each year up to a maximum of 30 days with full pay. The firemen contended that this meant "working days". Their contention in

effect was that the days they were off-duty should not be included as vacation days. The Court of Civil Appeals in that case (260 So.2d 779) stated: "We are of the opinion that the trial judge was correct in his interpretation of the work 'days' as contained in LRS 33:1996. We have previously decided that this is a general law and that it applies to all Fire Department governing authorities throughout the State. The only way in which such a statute can be applied equally throughout the State is to determine that a day for annual vacation purposes means a calendar day. To rule otherwise would cause not only confusion in its application to other departments throughout the State, but even within the Fire Department in the City of New Orleans itself, wherein the actual working Firemen work different shifts and schedule arrangements than the other personnel in the department." The Supreme Court of Louisiana sustained this interpretation of the word "day" as meaning a calendar day.

In *Golden v. City of Oakland,* 122 Cal. Rptr. 400, 49 Cal.App.3d 284 (Ct. of App., First Dist., Div. 4, 1975) that court had before it an ordinance that employed the term "working day" in respect to vacation benefits for members of the Fire Department. The predecessor ordinance used only the word "days" rather than "working days". That court held that even though the ordinance used the words "working days" it meant "calendar days".

In Section 20 of Article 1269m (disciplinary suspensions) the statute refers to 15 days. In Section 26(a) of the same Act, when applied to vacations, the Act defines *a calendar day as a day in which a member would be required to work.* This definition of a "day" was not used in Section 20.

In *Coffman v. City of Wichita Falls,* 374 S.W.2d 798 (Fort Worth Civ.App., 1964, writ ref.) the court had before it the construction of that portion of Art. 1269m, Section 26(a), concerning the meaning of 15 *working days* when applied to vacation pay. Also involved is a construction of Rule XVII, Section 50, of the Civil Service rules of the City of Wichita Falls which has been unchanged from date of that decision to the present time.

In that suit the statute and rules provided that employees in the classified service shall earn a minimum of 15 working days vacation with pay in each calendar year. The plaintiffs contended there is actually no time off from their normal work load and, therefore, in spite of the fact plaintiffs were actually off duty as many as 26 consecutive days at full pay because of the change in their shifts and work duties during the summer but that such time off between shifts and in the summer months was not vacation as contemplated by the statutes. All the plaintiffs were paid monthly salaries and received full salaries while off from work during the summer months.

This Court held that to allow the firemen's contention would in effect double the firemen's vacation pay. This Court denied the firemen's claims, thus in effect holding that 15 working days meant 15 calendar days regardless of whether they were work days or off-duty days.

We are persuaded that the rationale of the *Coffman* case should also be applied to "15 day" disciplinary suspensions.

■ We hold that the term "15 days" as used in Section 20 of the Act means "15 successive calendar days".

■ It is our opinion that the suspension of Lt. Harris for 23 calendar days was an "indefinite suspension" within the terms and meaning of Section 16, and he was denied the right of a hearing and appeal to the court under the terms and provisions of the Act referred to.

For the foregoing reasons we hold that the trial court did not err in refusing to dismiss Harris' appeal and that the court had jurisdiction to pass upon the question of law here involved.

■ By its 6th point the City asserts the trial court erred in holding that the suspension of Harris was unconstitutional under both the State and Federal Constitutions for the reasons same was not pleaded.

We overrule this point.

Harris pleaded that the disciplinary suspension was invalid and was in violation "of the law" and should be set aside and held for naught. No special exceptions were filed. The trial court found that this issue was tried by consent.

It is our opinion that the pleadings when examined as a whole, together with the findings of the trial court, showed that Harris was contending and did contend that the acts affecting him were unlawful. The pleadings provided the City with fair notice and complied with Rule 45, T.R.C.P. In any event said issues were tried by consent within the meaning of Rule 67, T.R.C.P.

The City, by its 7th point of error, asserts that the trial court erred in holding that the refusal of the Civil Service Commission to grant a hearing to Harris constituted a violation of the due process clause of the United States Constitution.

We overrule this point.

Under this point the City's sole argument is as follows: "It is conceded that a public employee with tenure has a property right in his continued employment which is within the Fourteenth Amendment's protection, and he is entitled to procedural due process if he is discharged. However, it is urged that this rule should not be applied to a disciplinary suspension of no more than fifteen days." The City cites no authorities.

■ It is our opinion that if our holding in connection with points of errors Nos. 4 and 5 did not dispose of this point, then the City waived this point of error by failing to brief it. *Smith v. Davis,* 453 S.W.2d 340 (Fort Worth Civ.App., 1970, ref., n. r. e.); *West Texas Utilities Company v. Bergstrom,* 458 S.W.2d 548 (Eastland Civ.App., 1970, ref., n. r. e.).

■ By its 8th point the City asserts that the trial court erred in holding that the provision of Section 5 of Art. 1269m is unconstitutionally vague and general and invalid under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution.

This point is sustained. However, sustaining this point does not in this case require a reversal.

Section 5 gives the Commission power to prescribe what shall constitute cause for removal or suspension of a fireman provided the rules involve one or more of the named complaints which includes conduct prejudicial to good order. Section 16 (indefinite suspensions) provides that the cause for the suspension of a fireman shall not only point out the Civil Service rule alleged to have been violated but shall also specifically point out the act or acts complained of on the part of such employee.

The order of suspension signed by the Fire Chief alleges that Harris violated Rule XIV, Section 45, of the Civil Service Rules, as follows: "(H) Conduct unbecoming to a gentlemen and/or prejudicial to good order." Following this general statement the order stated the hour, the date and the specific acts made the basis of the suspension.

Ordinarily these constitutional provisions referred to above prescribe the rights of a defendant in criminal prosecutions. Article 1, Section 10, of the Texas Constitution, provides that in criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him and to have a copy thereof. This case at bar, however, is a civil proceeding and not a criminal prosecution.

■ In *Bolieu v. Firemen's & Policemen's Civil Service Com'n,* 330 S.W.2d 234 (San Antonio Civ.App., 1959, ref., n. r. e.), a fireman was charged with conduct prejudicial to good order. Then in connection with this general statement he was charged with intoxication while on duty. The Civil Serv-

ice Commission and the trial court upheld the order discharging the fireman. That court stated: "We do not hold that such civil service hearings are subject to the stringency of the criminal law, but only that Section 5 of Article 1269m recognizes that the general charge supported by specific acts is a suitable procedure for a profession which demands a state of readiness, strict discipline, and a measure of obedience and valor not expected in ordinary callings. 62 C.J.S. Municipal Corporations § 606a."

Since we approve the statement quoted in the above paragraph we hold that under the facts of this case the grounds for suspension given by the Fire Chief were not unconstitutionally vague.

Judgment of the trial court is affirmed.