**Buck SOSA, Appellant,**

v.

**The CITY OF CORPUS CHRISTI, et al., Appellees.**

**No. 13–87–079–CV.**

Court of Appeals of Texas, Corpus Christi.

Sept. 3, 1987.

Rudy Gonzales, Jr., Chaves, Gonzales & Rodriguez, Corpus Christi, for appellant.

Carol Estes, Asst. City Atty., Corpus Christi, for appellees.

Before UTTER, SEERDEN and DORSEY, JJ.

OPINION

UTTER, Justice.

Sosa brought suit against the City of Corpus Christi and various City offices ("the City") seeking a declaration that city ordinance 18951 is "invalid, null and void to the extent that it purported to eliminate the classified, civil service position of District Fire Chief within the Fire Department for the City of Corpus Christi and create the civilian, non-civil service position of Director of Emergency Medical Services." Appellant also sought injunctive relief and a writ of mandamus ordering the Fire Chief to promote him to District Fire Chief. A take-nothing judgment was rendered against appellant by the trial court. We affirm the judgment of the trial court.

Promotions in the Fire Department are governed by Tex.Rev.Civ.Stat.Ann. art. 1269m, § 8A (Vernon Supp.1987). A list of eligible candidates for vacancies is prepared each year by the Fire Fighters' and Police Officers' Civil Service Commission according to performance on an examination. When a vacancy occurs, the Fire Chief has sixty days within which to fill the vacancy from the eligibility list. If the Fire Chief chooses to by-pass the first name on the list and fill the vacancy with a person ranked lower on the list, he must submit in writing his reasons for by-passing the first name to the Commission. Tex. Rev.Civ.Stat.Ann. art. 1269m, § 10 (Vernon 1963). If no appointment is made by the Fire Chief within sixty days from when the vacancy occurred, the person occupying the number one position on the list is, as a matter of law, entitled to the position. *See McLeod v. City of San Antonio*, 702 S.W. 2d 279 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Burkhart v. Moore*, 580 S.W. 2d 108 (Tex.Civ.App.—Eastland 1979, no writ); *Kiel v. City of Houston*, 558 S.W.2d 69 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *Michna v. City of Houston*, 521 S.W.2d 331 (Tex.Civ.App.— Houston [1st Dist.] 1975), *aff'd on remand*, 534 S.W.2d 728 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).

On July 30, 1985, the City Council passed Ordinance 18951, approving and adopting the city budget for the fiscal year beginning August 1, 1985. The Fire Department Budget, contained within the city budget, provided in part:

> One Director of Emergency Medical Services and one Assistant Director of EMS will be added to provide additional administrative and technical support; and as vacancies occur in the ranks of District Fire Chief and Fire Captain, each position will be decreased by one.

The City Budget was attached to Ordinance 18951 and incorporated therein by reference.

The District Fire Chief eligibility list, posted January 21, 1985, listed Jose Flores as the number one man, followed by Eloy Ceballos, number two, and Buck Sosa, number three. A vacancy occurred in January 1985, and Flores was promoted to District Fire Chief.

On July 30, 1985, when Ordinance 18951 was passed, appellant occupied the number two position on the list. On September 13, 1985, another vacancy among the District Fire Chiefs occurred, and pursuant to Ordinance 19851, that position was eliminated. On September 30, 1985, another vacancy occurred and Ceballos was promoted. At this point, appellant occupied the number one position on the list. However, no more vacancies occurred in the ranks of District Fire Chief while appellant was number one on the list.

Appellant brought suit seeking a declaration that Ordinance 18951, or the provision eliminating a District Fire Chief position, is "invalid, null and void." Appellant also sought an injunction postponing the compilation of a new eligibility list, and a writ of mandamus ordering the Fire Chief to promote him to District Fire Chief.

By his second point of error, appellant contends that the trial court erred in denying him leave to file a trial amendment, offered after both sides had rested, asserting that "Budget Ordinance 18951 does not have the legal effect of eliminating the

400

position of District Fire Chief ... since the language of the Ordinance does not specify that a District Chief position is being eliminated."

The trial court has broad discretion in granting or denying a trial amendment, and its decision will not be disturbed on appeal absent a clear abuse of discretion. *Yowell v. Piper Aircraft Corp.*, 703 S.W. 2d 630 (Tex.1986); *Merit Drilling Co. v. Honish*, 715 S.W.2d 87 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

Initially, appellant argues that his pleadings were sufficient to allege the subject matter contained in his trial amendment. We disagree. As the City points out, appellant's pleadings alleged that Ordinance 18951 was "invalid, null and void" because it was enacted in bad faith.

The City's attorney objected to the amendment, claiming surprise. She also argued that the City had not prepared any defense to this allegation that there was a defect in the form of the ordinance because it failed to specify that a District Fire Chief position was being eliminated.

■ Appellant's trial amendment asserting a new and separate cause of action appears to be based upon facts which were known to appellant, or in the exercise of due diligence, could have been known to him at a time which as would have enabled him to include the claim in his formal pleadings. Where it appears that the new matter was known or could have been known through the exercise of due diligence, the amendment should be denied. *Merit Drilling Co. v. Honish*, 715 S.W.2d at 91; *Missouri-Kansas-Texas Railroad Co. v. Alvarez*, 703 S.W.2d 367, 370 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Wendell v. Central Power & Light Co.*, 677 S.W.2d 610, 619 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ Furthermore, the issue was not tried by consent. In order for an issue to be tried by consent, there must be evidence in the record clearly establishing that both parties understood that the issue was being tried. *Wendell v. Central Power & Light Co.*, 677 S.W.2d at 618; *Realtex Corp. v.*

*Tyler*, 627 S.W.2d 441, 443–44 (Tex.App.—Houston [1st Dist.] 1981, no writ).

Appellant points to the testimony of Assistant Budget Director Oscar Martinez as relevant to the unpled issue being tried by consent. Martinez admitted that Ordinance 18951, on its face, does not indicate that a District Fire Chief position is being eliminated. However, as we pointed out earlier, the Ordinance incorporates the entire budget by reference and the budget indicates that this position was being eliminated. In any event, this testimony was also relevant to appellant's bad faith claim. *See Wendell v. Central Power & Light Co.*, 677 S.W.2d at 618. Appellant's second point of error is overruled.

By his first point of error, appellant alleges that Municipal Ordinance 18951 does not have the legal effect of eliminating a district fire chief position within the fire department. Since this point of error was not raised in appellant's pleadings, and since we have previously held that the trial court did not abuse its discretion in not allowing appellant to include such grounds by trial amendment, appellant's first point of error is overruled.

Appellant's third, fourth, fifth, and eighth points complain of the following conclusions of law made by the trial court:

1) The City of Corpus Christi acted in good faith in passing Ordinance 18951.
2) The City of Corpus Christi acted in good faith in creating the position of Director of Emergency Medical Services.
3) The City of Corpus Christi acted in good faith in deleting a District Chief position.

\* \* \* \* \* \*

9) Ordinance 18951 was enacted in good faith.

■ The City Council had the right to abolish the position of District Fire Chief and create the position of Director of Emergency Medical Services, provided it acted in good faith and by a duly enacted ordinance. *McLeod v. City of San Anto-*

*nio*, 702 S.W.2d at 281; *Kiel v. City of Houston*, 558 S.W.2d at 72.

Whether a civil service position was abolished in "good faith" presents a question of an abuse of discretion by the governing board of the municipality, which is a question of law for the trial court. *Moncrief v. Tate*, 593 S.W.2d 312, 314 (Tex.1980); *City of San Antonio v. Wallace*, 161 Tex. 41, 338 S.W.2d 153, 157 (Tex.1960). Contrary to the general rule, the burden of proving good faith is on the City. *City of San Antonio v. Wallace*, 338 S.W.2d at 158; *Kiel v. City of Houston*, 558 S.W.2d at 72.

Good faith is shown where the action taken by the City Council was in an effort to "effect an economy in operations or a betterment of municipal services." *City of San Antonio v. Wallace*, 338 S.W.2d at 156. A showing of increased efficiency will also support a finding of good faith. *Id.* at 157; *see also Moncrief v. Tate*, 593 S.W.2d at 313; *McLeod v. City of San Antonio*, 702 S.W.2d at 281; *Burkhart v. Moore*, 580 S.W.2d at 110; *Kiel v. City of Houston*, 558 S.W.2d at 72.

Prior to the passage of Ordinance 18951, emergency medical services were supervised by a District Fire Chief who held the title of Director of Ambulance Services. The District Chief who filled this position was not required to have any medical training or experience in administering emergency medical services. If a vacancy occurred in the Director of Ambulance Services District Fire Chief position, that position would be filled pursuant to Tex.Rev.Civ. Stat.Ann. art. 1269m, § 8A. The person selected was not required to have any medical training or administrative experience with emergency medical care as long as he or she met the general requirements for District Fire Chief.

In the early part of 1984, an Ad Hoc Committee on Emergency Medical Services was formed to study the ambulance service, investigate the future of emergency medical care, and to make recommendations to the City in order to "chart a course which will allow for the delivery of the highest quality of emergency medical services to [the] citizens in [the] most efficient manner." The Committee undertook a detailed study spanning a period of six months, thoroughly investigating the future of emergency medical services in the Corpus Christi area.

The report culminated in a hearing before the City Council on March 12, 1985, discussing the committee's report. Several members of the committee were present, as was appellant and the Fire Chief, Ralph Rogers. All participated in the discussion. City Manager Ed Martin testified at trial that the recommendations contained in the committee's report were adopted by the City Council, with the caveat that the establishment of an emergency medical service separate from the fire department would be deferred.

The report identified numerous problems with the then-current provision of emergency medical services impeding the efficient delivery of high-quality services to the citizens. The report emphasized the need to employ a Director of Emergency Medical Services who:

> will be in charge of the day to day administration of the department and will provide liaison between other members of the department and the Medical Director. He will oversee all administrative and routine medical matters, and will be responsible for budgeting, staffing, planning, and direction for the department. This person must be one who is a qualified administrator, experienced in emergency medical services delivery, and who is enthusiastic with good leadership qualities.

Not only would the new Director of Emergency Medical Services take over the duties of the District Fire Chief acting as Director of Ambulance Services, he, under the hiring guidelines and under the complete list of duties hereinafter set out, would be more qualified to perform those duties. Furthermore, the Director of Emergency Services would be responsible for performing many more detailed and specialized tasks than one only trained in emergency medicine could perform.

Where substantially the same duties of the abolished position are assigned to the

new position, bad faith may be indicated. *Burkhart v. Moore*, 580 S.W.2d at 110. However, where not only the former duties, but in addition, more specialized duties requiring the expertise of a more highly qualified individual are to be performed in the new position, no bad faith is shown. *McLeod v. City of San Antonio*, 702 S.W.2d at 281.

The record indicates that the objective of the City Council was to provide the best emergency medical service possible for the people of the City of Corpus Christi by seeking to employ an individual with specialized training in administration of emergency medical services. Ample evidence was presented to uphold the trial court's conclusions of good faith.

Courts will consider the element of good faith in passing upon the validity of the acts of municipal officials and thus assure that the civil service policy of the State will not be at the mercy of these officials. *Moncrief v. Tate*, 593 S.W.2d at 313. By the same token, courts will ensure that the civil service policies will not thwart a municipality's efforts to better community services by preventing the abolition of a civil service position when necessary to bring about a needed change. *Id.* at 313–14. Appellant's third, fourth, fifth, and eighth points are overruled.

■ By his sixth point, appellant complains that the trial court erred in holding that "Ordinance 18951 is not in violation of any statute or law or contract." Specifically, appellant argues that the civilian position of Director of Emergency Services is encompassed within the definition of "Fireman" as defined by Tex.Rev.Civ.Stat.Ann. art. 1269m, § 2 (Vernon Supp.1987), and therefore is a civil service position which can only be filled by compliance with article 1269m.

Article 1269m, § 2 provides that "the term ['fireman'] includes firemen who perform fire suppression, fire prevention, fire training, fire safety education, fire maintenance, fire communications, *fire medical*

emergency technology*, fire photography, or fire administration."[1] [emphasis ours] There is no definition of "fire medical emergency technology" contained in article 1269m.

Appellant argues that the Director of Emergency Medical Services assumes the duties of the District Fire Chief acting as Director of Ambulance Services and therefore this case is controlled by *City of Wichita Falls v. Harris*, 532 S.W.2d 653 (Tex. Civ.App.—Fort Worth 1975, writ ref'd n.r. e.).

In *Harris*, the City abolished the civil service position of "Fire Training Officer" and created the civilian position of "Fire Training Specialist." The Court repeatedly noted that the job duties of both positions were "almost identical." *Id.* at 656–57. The Court held that a "Fire Training Specialist" was a "fireman" under article 1269m, and the position could only be filled by compliance with civil service rules. *Id.* at 658.

In determining whether the new position of Director of Emergency Medical Services is a "fireman," we compare its duties with those of the abolished position. We must emphasize that the abolished position is *not* that of Director of Ambulance Services, but rather is that of District Fire Chief, since there is no civil service position entitled "Director of Ambulance Services."

Examples of duties of a District Fire Chief are:

> Performs all or part of duties of Assistant Fire Chief or First Assistant Fire Chief as delegated by that officer in his absence; directs activities and commands men and equipment during assigned shift; answers fire alarms and personally directs all firefighting and salvage activities at fire site unless relieved by the assistant Fire Chief or First Assistant Fire Chief; inspects station, men, and equipment; checks reports and requisitions of subordinates; keeps necessary records and makes reports to supervising who...."

---

1. We note the circular reasoning employed in the definition by defining "fireman" as "firemen who...."

officers; enforces rules and regulations of the Fire Department; enforces departmental policies of the Fire Chief; relieves First Assistant Fire Chief or Assistant Fire Chief of administrative details such as scheduling vacations, answering related routine correspondence, checking general statistical records related to fire activity, and handling public complaints and inquiries, as assigned.

Examples of the duties of the Director of Emergency Medical Services are:

Directs and evaluates medical emergency service programs to insure an efficient, cost-effective operation while providing quality health care for the community; staffs the program with emergency trained paramedic-certified personnel; coordinates the recommendation and installation of telecommunication network components; actively participates in the acquisition of emergency vehicles; maintains system of telecommunication contacts with mobile and stationary units to monitor activities of personnel, enlist services of other protective agencies, or provide alternate directions to on-scene emergency personnel when planned procedures are not feasible; coordinates policies and procedures for dispatching personnel with the Police Department; develops, plans, and participates in on-going training programs for ambulance, rescue personnel and dispatcher personnel, and in public education programs to inform the public on access to and proper usage of this service; maintains records of emergency medical service activities to provide data for evaluating the program; prepares reports stating progress, problems, and recommendations for improving the service; coordinates activities and provides administrative support for the Ambulance Advisory Board; prepares the annual budget request; may represent the City in court cases; serves as liaison with other ambulance services, law enforcement agencies and hospitals; performs other related duties as required.

While it can hardly be argued that the Director of Emergency Medical Services' duties would not include the field of "fire medical emergency technology," his duties range much further and encompass many more responsibilities than merely *fire-related* emergency medical care. The fact that the Director of Emergency Medical Services may be responsible for "fire medical emergency technology" as one of his many responsibilities is not dispositive of whether he is a "fireman."

Nor do we find as dispositive the facts that he (1) is under the direction of the Fire Chief, (2) has authorization to drive Fire Department vehicles, (3) has an office in a fire station, and (4) is paid from the Fire Department Budget. These facts may exist merely for convenience and efficiency, since all paramedics and EMTs are still required to be firemen and are also under the direction of the Fire Chief.

█ Appellant also argues that an agreement between the City and the Firefighters' Union prohibited the use of civilians to perform the duties of Director of Emergency Services. We do not read the agreement as being so restrictive. The applicable provision reads:

The City reserves the right to use civilians in the Fire Department to perform duties which do not require a certified Firefighter. The scope of such duties include communications, information systems, records, clerical support, and maintenance.

Civilian duties are not *limited* to only those enumerated, but merely *include* those enumerated.

In light of the above discussions, we conclude that the trial court did not err in holding that Ordinance 18951 does not violate any statute, law, or contract. Appellant's sixth point is overruled.

By his seventh and ninth points, appellant complains that the trial court erred in finding that "none of the employees or officers of the City of Corpus Christi acted improperly or in bad faith in proposing the abolishment of a District Fire Chief position or the creation of the position of Director of Emergency [Medical] Services."

We do not reach the merits of these points, because whether or not any "employees or officers" of the City acted improperly or in bad faith in proposing or supporting the City Council's actions is not relevant to whether the *City Council* acted in *good faith* in passing the Ordinance, the only real issue in this case. The Supreme Court in *Wallace* held that the secret motives of members of the City Council are not matters for judicial inquiry. *City of San Antonio v. Wallace*, 338 S.W.2d at 156. "If an action be proper as an economic move, it would not be rendered otherwise, because a member of a city council derived some malicious pleasure because a particular individual lost his job." *Id.* If the motives of individual members of the City Council are irrelevant, then certainly the motives of proponents of the Ordinance are likewise irrelevant. Nor do we view this kind of evidence as the type of "surrounding circumstances" which may be examined in order to determine the good faith of a questioned action taken by a city council. *See id.* Appellant's seventh and ninth points are overruled.

By his three remaining points, appellant challenges the trial court's rulings on discovery. Appellant's tenth point complains of the trial court's ruling quashing notices of depositions of the individual members of the City Council.

In his notice, appellant stated the matters upon which he intended to examine each deponent. Each of the four matters listed by appellant involved the individual council member's "complete understanding and knowledge" of the action taken by the Council eliminating the District Fire Chief position, as well as "the complete process" undertaken by each Council member "in determining the advisability" of the action taken.

The individual knowledge, lack of knowledge, understanding, or thought process of any individual member of a governmental body such as a city council have no bearing upon the validity of the action taken by the body. *See generally Commissioner's Court of El Paso County v. El Paso County Sheriff's Deputies Association,*

620 S.W.2d 900, 902 (Tex.App.—El Paso 1981, writ ref'd n.r.e.). An ordinance expresses the collective will of the City Council acting in its official capacity at a duly assembled meeting. *See id.; Stirman v. City of Tyler*, 443 S.W.2d 354, 358 (Tex. Civ.App.—Tyler 1969, writ ref'd n.r.e.).

The trial court's rulings on discovery matters will not be overturned absent a showing of abuse of discretion. *See Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56 (Tex.1986) (mandamus). Quashing a notice of deposition is a type of protective order. Tex.R.Civ.P. 166b(4). The burden is on the party seeking the protective order to show that the discovery sought is not reasonably calculated to lead to the discovery of admissible evidence. *Weisel Enterprises, Inc. v. Curry*, at 718 S.W.2d at 58.

The information sought by appellant is irrelevant to the issue of good faith action by the City Council. *City of San Antonio v. Wallace*, 338 S.W.2d at 156; *Commissioner's Court of El Paso County v. El Paso County Sheriff's Deputies Association*, 620 S.W.2d at 902. Upon proper objection to questions propounded by appellant regarding any of the four areas enumerated in his notice of deposition, a Council member would not be required to respond. Since appellant designated the areas he wished to depose the Council members on, and he would not be entitled to obtain that information, we find no harm in quashing the deposition notices. Appellant's tenth point is overruled.

By his eleventh point, appellant contends that the trial court abused its discretion in limiting interrogatories to the individual council members. Initially we note that the parties appear to have agreed that interrogatories to each City Council member would be appropriate if limited in scope. Although we certainly question whether parties can enlarge the scope of discovery to permit interrogatories to *nonparties*, Tex.R.Civ.P. 166b(1), 168, we have determined that the trial court did not abuse its discretion. Of sixteen interrogatories, the trial court sustained objections to ten. These objections were properly sustained because the information sought

did not concern what the City Council as a whole "knew," but rather what individual members knew and therefore was irrelevant. *See Commissioner's Court of El Paso County v. El Paso County Sheriff's Deputies Association,* 620 S.W.2d at 902. Appellant's eleventh point of error is overruled.

By his twelfth and final point, appellant contends that the trial court erred in quashing subpoenas served on each member of the City Council.

The City's motion to quash alleged that "the testimony of the Council is not relevant or admissible in this cause of action; as a matter of law, the City Council is a Legislative body whose individual knowledge, understanding, and thought processes cannot be used to attack an ordinance, which is an act of legislation." In his response to the City's motion to quash, appellant stated "any individual *with relevant knowledge* concerning the facts the subject of a cause of action are subject to the subpoena power of the COURT." [emphasis ours]

Whether an individual member of a legislative body can be compelled to appear to testify in a trial concerning the validity of a law passed by the legislative body of which he is a member appears to present an issue not previously ruled upon in this state. However, we find guidance in case law from other jurisdictions.

Judicial review of legislative action should be restricted to examination of the language of the law in question and official legislative records. *Administrative Justice of the Housing Court Department v. Commissioner of Administration,* 391 Mass. 198, 461 N.E.2d 243, 248 (1984). "Individual legislators may not be questioned to determine the evidence upon which they relied or their reasons for voting a particular way." *County of Santa Cruz v. City of Watsonville,* 177 Cal.App.3d 831, 223 Cal.Rptr. 272, 279 (6th Dist.1985). These principles are consistent with the basic doctrine that the subjective knowledge, motive, or mental process of an individual legislator is irrelevant to a determination of the validity of a legislative act because the legislative act expresses the *collective will* of the legislative body.

We therefore hold that the individual members of the City Council are not competent to testify regarding the "good faith" of the Council in enacting Ordinance 18951. *See Golder v. Department of Revenue,* 123 Ariz. 260, 599 P.2d 216, 221 (1979); *Picture Rocks Fire District v. Pima County,* 152 Ariz. 442, 733 P.2d 639, 641 (App.1986). Therefore, the trial court did not err in quashing the subpoenas.

Furthermore, public policy dictates that individual legislators be incompetent witnesses regarding a law enacted by the legislature as a body. Legislators' hands must not be bound by a possibility of being haled into court to testify any time a legislative action is questioned. Appellant's twelfth point is overruled.

The judgment of the trial court is AFFIRMED.