541 A.2d 1179

Reggie K. Minnick, Appellant *v.* Borough of Hyndman, Appellee.

Submitted on briefs April 19, 1988, to President Judge CRUMLISH, JR., and Judge MCGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*Wilbert H. Beachy, III,* for appellant.

*Donley C. Logue, Jr.,* for appellee.

OPINION BY SENIOR JUDGE NARICK, May 26, 1988:

Reggie Minnick (Appellant) appeals from orders of the Court of Common Pleas of Bedford County. Appellant was employed by Hyndman Borough (Borough) as Chief of Police for approximately 17½ years. In 1986 Appellant was the sole member of the Borough's police department which was operated out of Appellant's

home, the Borough having no police building.[1] The circumstances leading to Appellant's cessation of employment as Chief of Police involved a motion passed by Borough Council (Council) on July 7, 1986. This motion as set forth in the minutes of Council's meeting states:

> Police — C. Mueller made motion to *do away with* police department because Borough cannot afford a police car, and we are virtually without a policeman now. Motion seconded by D. Biller. Motion carried. (Yes — Robinson, No — Housel) — D. Biller stated that he would like to see local citizens have a fund raiser to buy a police car. He said he did not know how we can do without a police department, but felt we would have to try doing without police department for at least the rest of the year. He feels that if a fund raiser is successful, possibly by January 1987 Borough may be able to again have a police department. S. Robinson echoes many of the same feelings as D. Biller. *(Layoff is indefinite with no recall date determined.)* (Emphasis added.)[2]

On August 4, 1986, Appellant filed a notice of appeal under the Local Agency Law and an action for declaratory judgment with the court of common pleas. On September 15, 1986, a special meeting of Council was convened and Council clarified in a motion that its actions in July of 1986 were a furlough of Appellant. On October 20, 1986, Appellant filed a third appeal to the court of common pleas pursuant to the Police Tenure

---

[1] The record reveals that all police equipment was kept at Appellant's home and that the Borough paid for Appellant's home telephone service which was also utilized for police services.

[2] For reasons not relevant to this case, the police car was totalled in an accident which occurred during the course of police business.

Act (Act), Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §§811-816. These cases were consolidated for hearing. The trial court denied Appellant's requests for relief concluding that Council's actions were that of a furlough and not an abolition of the police department, that the furlough was valid, and that Council's actions were not in bad faith. Hence, this appeal.

The issues before us as framed by Appellant are: (1) whether the trial court erred in finding that the actions of Council constituted a furlough and not an improper abolition of the police department; (2) whether the trial court erred in finding that Appellant's furlough was valid when he had not been provided with notice and an opportunity to be heard; (3) whether the trial court erred in finding that Council's actions were for reasons of economy; and (4) whether Council's actions were vexatious and in bad faith.

Appellant maintains that Council was actually attempting to abolish the police department and that this action was improper because a police department may only be abolished by ordinance. In order to determine whether Council was attempting to furlough Appellant or abolish the police department, we look to the motions passed by Council in July and September 1986. While the July 7, 1986 motion does contain the words "do away with", the motion also indicates that the layoff was indefinite. The motion also discusses fund raisers for the police department and trying to do without the police department for a period of one year. Also at this time, no action was taken with respect to insurance coverage on the police cruiser, the telephone service at Appellant's home and insurance coverage provided by the Borough to Appellant's family. Council did not decide to terminate payment of Appellant's telephone service and insurance coverage until their regular meeting which was held on August 4, 1986. Appellant was noti-

fied by letter dated August 5, 1986 that his telephone service and insurance coverage would be terminated. Additionally, at the September 15, 1986 Council meeting, a motion was made to clarify that Council's intent at the July meeting was to furlough Appellant, not to abolish the police department, and that this was still Council's intent. Thus, we are satisfied based upon the record herein that Council's intent was to furlough Appellant.

The second argument raised by Appellant is that if Council's intent was to furlough Appellant, the furlough was invalid because it occurred without prior notice to him and an opportunity to be heard, in violation of Sections 3 and 4 of the Act, 53 P.S. §§813 and 814. Appellant's argument here is flawed.

Section 2 of the Act, 53 P.S. §812 sets forth the reasons for which a police officer may be suspended, removed or reduced in rank and requires that a written statement of charges be provided to an individual within five days after charges have been filed.[3] Section 3 of the Act which pertains to reduction in number of police provides:

---

[3] Section 2 indicates that a policeman shall not be suspended, removed or reduced in rank except under the following circumstances:

(1) [P]hysical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer; and (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed.

If, for reasons of economy or other reasons, it shall be deemed necessary by any township of the second class, or any borough or township of the first class within the scope of this act, to reduce the number of paid employes of the police department, then such political subdivision shall apply the following procedure: (a) If there are any employes eligible for retirement under the terms of any retirement or pension law then such reduction in number shall be made by retirement, if the party to be retired exceeds the maximum age as defined in . . . the 'Pennsylvania Human Relations Act'; (b) If the number of paid employes in the police force eligible to retirement is sufficient to effect the necessary reduction in number, or if there are no persons eligible for retirement, or if no retirement or pension fund exists, then the reduction shall be effected by furloughing the man or men, including probationers, last appointed to said police force. Such removal shall be accomplished by furloughing in numerical order, commencing with the man last appointed, until such reduction shall have been accomplished. . . .

Section 4 of the Act which provides for hearings on dismissals reads:

If the person sought to be suspended or removed shall demand a public hearing, the demand shall be made to the appointing authority. Such person may make written answers to any charges filed against him. The appointing authority shall grant him a public hearing, which shall be held within a period of ten days from the filing of charges in writing and written answers thereto within five days, and may be continued by the appointing authority for cause or at the request of the accused. . . .

Section 2 of the Act provides that a written statement of charges shall be provided to an individual charged under Section 2. On the other hand, Section 3 which sets forth the procedure to be followed when reducing the number of police does not provide for prior notice or a hearing. Also, furlough situations under Section 3 do not entail the filing of charges. Section 4 of the Act indicates that a party shall be provided with a hearing within ten days after charges have been filed. In addition, Section 4 provides a party with an opportunity to file an answer to the charges. Accordingly, the Section 4 right to a hearing does not apply to Section 3 furlough situations.[4]

Appellant's third argument is that Council's actions were not for reasons of economy, but rather were based upon feelings of animosity that certain Council members had towards Appellant. Our review of the record reveals that the testimony of Mayor T. Cunningham, Councilwoman D. Hoffman and Borough Treasurer L. Bistline indicated that the Borough had been experiencing financial difficulty for some time. Mayor Cunningham testified that he did not believe the Borough could afford a police officer or a functioning police department. Councilwoman Hoffman testified that the Borough's projected loss of revenue sharing, the financial effect of the 1984 flood and the availability of police services from the state police were major factors in the Borough's decision to furlough Appellant.[5] The record

---

[4] *Cf. Almy v. Borough of Wilkinsburg*, 53 Pa. Commonwealth Ct. 46, 416 A.2d 638 (1980) where it was held that furloughed police officers were not entitled to a hearing.

[5] The record also discloses that the Borough conducted an unscientific survey whereby postcards were sent to residents asking which of three Borough services residents would be willing to give up: (1) half of street lights, (2) police services, or (3) plowing, paving and water maintenance. The postcards were returned indicating

also revealed that the police department was an expense to the Borough of approximately $30,000 per year and that state police services would be available at little or no cost.

A municipality need not be in a state of financial crisis in order to reduce its police force pursuant to Section 3 of the Act. *Gruver v. Howell,* 28 Pa. Commonwealth Ct. 296, 368 A.2d 920 (1977). Reasons of economy also include the saving of money by removal of unneeded employees or to improve efficiency. *Id.* Here the evidence revealed that the actions taken to furlough Appellant were based upon financial concerns of the Borough. Accordingly, Appellant's furlough pursuant to Section 3 of the Act was proper.

Appellant's final argument is that he should be awarded counsel fees and costs because Council's actions were vexatious and in bad faith. There is a presumption that public officials act with regularity and in the absence of evidence to the contrary their actions will be upheld. *Kraftician v. Borough of Carnegie,* 35 Pa. Commonwealth Ct. 470, 386 A.2d 1064 (1978). However, if evidence reveals that a municipality's actions were not exercised in good faith, then their actions will be declared invalid. *Kraftician; Gruver.* Although there was conflicting testimony, the trial court concluded that no bad faith had occurred with respect to the furlough of Appellant. Matters of credibility rest with the trial judge. *Almy.* We are satisfied after reviewing the record that there is evidence to support the trial court's conclusions that the Borough's actions were based upon financial concerns; therefore, we will not disturb the trial court's findings.

--------

that most people were willing to give up police services. A public meeting was held on June 16, 1986 whereby elimination of police services was discussed.

The orders of the Court of Common Pleas of Bedford County are affirmed.

ORDER

AND NOW, this 26th day of May, 1988, the orders of the Court of Common Pleas of Bedford County in regard to the above-captioned matter are hereby affirmed.